**AMICA MUTUAL INSURANCE COMPANY, Appellant (Plaintiff Below),**

v.

**CINCINNATI INSURANCE COMPANY, Appellee (Defendant Below).**

**No. 2–1184–A–344.**

Court of Appeals of Indiana, Second District.

June 30, 1986.

James P. Fenton, Ronald J. Ehinger, Barrett, Barrett & McNagny, Fort Wayne, for appellant.

Thomas C. Ewing, Thomas L. Wooding, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, for appellee.

SULLIVAN, Judge.

The trial court granted declaratory relief in favor of appellee, Cincinnati Insurance Company, after determining that an auto liability policy issued by Amica Mutual Insurance Company provided coverage for the insured D. Richard Claassen. The judgment fixed Amica's liability at $80,000, its share of a $300,000 settlement of a wrongful death claim.

Only one issue is presented on appeal: Whether the phrase "private passenger automobile" in Amica's insurance policy includes, within its definition, a 66–passenger school bus.

D. Richard Claassen (Claassen) purchased a 1969 Ford 66–passenger school bus from Kerlin Bus Sales and Service on August 17, 1982. It is not disputed that Claassen bought the school bus for his personal use, although there was testimony that he intended to deliver the bus for a friend's use in Florida. As Claassen was driving the school bus home, he collided with an automobile driven by Kirk D. Lavrack. Lavrack died as a result of injuries sustained in the accident.

The personal representative of Lavrack's estate demanded $300,000 as settlement of its wrongful death claim against Claassen and Kerlin Bus Sales. By agreement, and stipulation with Amica, Cincinnati Insurance Company, Kerlin's insurer, agreed to contribute $220,000 as its share towards settlement of the claim leaving $80,000 as Amica's share. After payment of the claim, pursuant to the agreement, Cincinnati Insurance deposited $80,000 in escrow to be paid to the successful litigant of the dispute regarding Amica's liability coverage. The trial court concluded that Claassen's school bus was insured by Amica's policy and that Cincinnati Insurance was entitled to the escrowed deposit and all accrued interest.

The Amica policy covered Claassen's "covered auto," which was defined as:

"1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you become the owner:

a. a private passenger auto; or

b. a pickup, panel truck or van, not used in any business or occupation other than farming or ranching." Record at 89.

Insurance policies are contracts and must be construed as a whole in accordance with the intent of the parties. *Evans v. National Life Accident Insurance Co.* (1984) 2d Dist., Ind.App., 467 N.E.2d 1216. Absent ambiguity, policy terms will be given their plain and ordinary meaning. *Eli Lilly and Co. v. Home Insurance Co.* (1985) Ind., 482 N.E.2d 467. If a term or provision is ambiguous and susceptible of differing interpretations, that interpretation most favorable to the insured will be adopted. *Id.* A contract or policy, however, is not ambiguous merely because the parties favor contrary interpretations. *Northland Insurance Co. v. Crites* (1981) 1st Dist., Ind. App., 419 N.E.2d 164. "Under Indiana law, an insurance policy is ambiguous if reasonable persons may honestly differ as to the meaning of the policy language." *Eli Lilly and Co. v. Home Insurance, supra.* See also, *State Security Insurance Co. v. Ottinger* (1985) 2d Dist., Ind.App., 487 N.E.2d 446.

Amica contends that its phrase, "private passenger auto," though undefined, is not ambiguous and that the plain and ordinary meaning of the phrase does not include a school bus. Cincinnati Insurance understandably argues to the contrary, to the effect that the phrase is ambiguous and should be construed in favor of coverage. Alternatively, Cincinnati Insurance argues that this court's definition of "automobile" in *Blankenbaker v. Great Central Insurance Co.* (1972) 2d Dist., 151 Ind.App. 693, 281 N.E.2d 496, includes a vehicle such as Claassen's school bus.

In *Blankenbaker, supra,* this court addressed the question whether a tire and rim assembly lying in the middle of the road constituted an automobile for purposes of determining whether coverage existed under a policy's uninsured motorist provision. The court held that "as a matter of law the tire and rim assembly which Blankenbaker struck is not a hit-and-run automobile within the terms of the policy." *Id.* 281 N.E.2d at 501. The court's statement that "[t]o be an automobile, the instrumentality must be a self-propelled four-wheeled landroving vehicle" was made solely in this context.

*Id.* 281 N.E.2d at 500. It was not intended to be a benchmark for the definition of an automobile. Such a mechanistic application of *Blankenbaker* would lead to absurd results, such as extending coverage to certain vehicles clearly not within the contemplation of the parties, e.g., a riding lawnmower. An insurance policy, like any other contract, must be construed as a whole, giving effect whenever possible to the expressed intent of the contracting parties.

■ Construing the policy as a whole, it is readily apparent that the parties herein did not intend that the phrase "private passenger auto" be given such an expansive interpretation. The policy provided liability coverage only for a "covered auto." The term "covered auto" was assigned a three-part definition, of which "private passenger auto" is but one. The only reasonable inference is that "private passenger auto" was intended to cover a much narrower range of vehicles than was "covered auto," even assuming, as Cincinnati Insurance argues, that the term "auto" standing alone is synonymous with "bus." The other two sections of the definition provided coverage for the "vehicles" specifically described in the policy (a Plymouth sedan and a Dodge van), and for a pickup, panel truck or van, excluding any of the latter vehicles when used in a business or occupation.

We do not agree with Cincinnati Insurance's contention that this clause intended only to exclude business uses of those vehicles, and did not intend to define "auto." Part 2(b) is in the "Definitions" section, not the "Exclusions" section, and in addition begins as follows: " 'Your covered auto' means...." The clause is not exclusionary; it provides additional coverage for designated vehicles with a non-business use. *Cf. Hoover v. National Casualty Co.* (1942) 236 Mo.App. 1093, 162 S.W.2d 363, 365–66. (The court construed a clause providing coverage for "private pleasure automobile" but excluding motorcycles and farm machinery. The court held such a clause was ambiguous because "it would

seem that all automotive vehicles not specifically named and excluded [were] meant to be included in the coverage.")

If, as the trial court concluded, the term "automobile," in the phrase "private passenger automobile," includes a typical car *and* a school bus, and by inference everything in between, the provision relating to pickups, panel trucks and vans is rendered meaningless for these vehicles obviously fall somewhere between a car and a school bus. The focus of this case at the trial level appears to have been almost exclusively upon the number of wheels needed to transform any vehicle into an automobile.[1] The evidence before the trial court, however, was that the ordinary and plain meaning of the phrase in question did not include a 66–passenger school bus, some 30 to 35 feet long, 10 feet high and weighing approximately 12,000 pounds.[2] A policy must be construed so that its provisions are not rendered ineffective or meaningless as a result of such construction. *Stockberger v. Meridian Mutual Insurance Co.* (1979) 3d Dist., 182 Ind.App. 566, 395 N.E.2d 1272.

■ Viewed as a whole, the policy was not ambiguous. The trial court's construction of the phrase "private passenger automobile" was clearly contrary to the parties' reasonable expectations and expressed intent.

The trial court's judgment in favor of Cincinnati Insurance is reversed and the cause is remanded with instructions to enter judgment for Amica.

SHIELDS, J., concurs.

BUCHANAN, C.J., concurs in result.

1. At trial and upon appeal the parties place a degree of emphasis upon the relationship between and among tires, wheels, rims and axles.

2. The trial court also concluded that Amica had created an ambiguity within the policy by failing to define "private passenger auto" and by failing to specifically exclude the school bus from the policy's coverage. The trial court ap-

parently considered it significant that Amica had excluded vehicles having less than four wheels but not vehicles having *more* than four wheels. In light of the trial court's conclusion that the school bus was a *four wheel*, landroving self-propelled vehicle, we do not see how excluding vehicles with more than four wheels would have made a difference.