**TOWN OF ORLAND, Appellant–Plaintiff,**

v.

**NATIONAL FIRE & CASUALTY CO., Appellee–Defendant.**

**No. 76A03–9904–CV–152.**

Court of Appeals of Indiana.

April 11, 2000.

Rehearing Denied May 16, 2000.

---

D. Randall Brown, Gary C. Furst, Barnes & Thornburg, Fort Wayne, Indiana, Neal Lewis, Lewis & Associates, Orland, Indiana, Attorneys for Appellant.

Larry L. Barnard, Miller Carson Boxberger & Murphy, Fort Wayne, Indiana, Steven D. Pearson, Dawn M. Gonzalez, Meckler Bulger & Tilson, Chicago, Illinois, Attorneys for Appellee.

## OPINION

BAKER, Judge

Appellant-plaintiff Town of Orland (Orland) appeals the trial court's grant of partial summary judgment in favor of appellee-defendant National Fire & Casualty Co. (National). Specifically, Orland argues that National had a duty to defend Orland in the lawsuit filed against it by Jones & Henry Engineers, LTD (Jones). Thus, Orland asserts that summary judgment should have been granted in its favor on the duty to defend issue.

### FACTS

In 1993, Orland contracted with Jones, an engineering firm, to design a wastewater public works and an extension of Orland's drinking water system to a neighboring lake community. In late 1995, experts in the field of wastewater technology brought to Orland's attention questions with respect to Jones' technical design and cost projections. At this same time, citizens began to take a hard look at the engineering plans, as they had learned that Jones planned to pipe the discharged waste from sewage lagoons more than one-half mile around the DNR Fish Hatchery to a point downstream of the hatchery intakes.

Following a record-breaking turnout of over 90% of registered voters, a new Town Council (Council) was selected in November 1996. On January 1, 1997, the Council's first order of business was to evaluate its options and investigate the questions relating to Jones' design and cost estimates. Therefore, the Council directed Jones to suspend all activities on the water and sewage projects and then requested another engineering company to prepare a value engineering report, which is essentially a second opinion.

During this delay, Jones filed a complaint for declaratory judgment in federal court against Orland on April 23, 1996 and an amended complaint on a January 23, 1997. The amended complaint provided in relevant part as follows:

*Statement of Facts*

6. Plaintiff entered into a contract with the Town of Orland to provide engineering services for the design of a wastewater collection and treatment facility on or about October 11, 1993. . . .

7. On April 8, 1994 Plaintiff and Defendant executed Addendum No. 1 to the Engineering Service Agreement in connection with the wastewater facility. . . .

8. On March 10, 1994, Plaintiff entered into a contract with the Town of Orland to provide engineering services for the design of a water distribution system. . . .

9. Plaintiff completed the preliminary engineering reports and designs for both projects which were approved by the Farmers Home Administration . . . and the Town of Orland.

10. In February 1995, some residents living in and around the Town of

Orland filed a lawsuit against the Town to enjoin the planning, construction and permitting of the wastewater treatment facility.

11. On April 6, 1995, the trial court issued a preliminary injunction restraining the Town and its agents from going forward with the wastewater project.

12. On October 20, 1995, the preliminary injunction was vacated by the Indiana Supreme Court.

13. On November 7, 1995, a new town council was elected to govern the Town of Orland. In January 1996, the new town council members were installed in office.

14. Since January 1996, Defendant has told Jones & Henry that all work on the wastewater and water projects was being suspended while the Town reevaluated its various options.

15. Defendant has hired a different engineering firm to review and evaluate the preliminary engineering reports completed by Jones & Henry, as well as prepare additional documents within the scope of review set forth in the Jones & Henry agreements.

16. Defendant, by counsel, has requested that Plaintiff sign a mutual release discharging each party from any further obligations under the contracts and through its actions has indicated that it does not wish to continue working with Jones & Henry. The Town has asserted that it does not owe Plaintiff any additional payment for the engineering services rendered under the contracts.

17. Defendant currently owes Plaintiff approximately $278,560 for services rendered to date under the contracts.

18. As part of the permitting process for the water and wastewater projects the Indiana Department of Environmental Management ("IDEM") and the Indiana Department of Natural Resources ("IDNR") have requested responses to their inquiries about the projects. However, Jones & Henry is uncertain as to its current status under the contracts and whether it will be able to receive payment for its services.

19. Jones & Henry is willing and able to continue to perform under the contracts, but to their knowledge and belief are not being permitted to do so.

20. If Jones & Henry does not respond to the inquiries from IDEM and IDNR it runs the risk of having breached the contracts.

21. Jones & Henry is unable to continue to perform under the contracts without incurring additional expenses and fees, which the Town has refused to pay.

*Count I—Declaratory Judgment*

. . . .

23. Plaintiff is uncertain as to its rights and obligations under the wastewater and water contracts due to the actions of the Defendant. Therefore, Plaintiff is entitled to a judgment declaring its rights, obligations, and legal relationship under the wastewater and water contracts pursuant to 28 U.S.C. § 2201.

24. By virtue of positions taken by the Town, and its agents and representatives, repudiating its agreements with Jones & Henry, demanding a release from liability, and refusing to honor obligations incurred, an actual controversy exists between the parties.

25. Plaintiff is entitled to payment for the engineering services it has rendered under the wastewater and water contracts in the amount of $278,560. . . .

WHEREFORE, Jones & Henry Engineers, Ltd. respectfully requests that the Court declare that the contracts between Plaintiff and the Town of Orland are terminated, that Jones & Henry Engineers, Ltd. is released from all obligations to perform any further under the contracts and that Jones & Henry Engineers, Ltd. is entitled to payment in the amount of $278,560 for engineering

fees and services which have been rendered to date, in addition to prejudgment interest on said amount and Jones & Henry's attorneys fees and costs. In the alternative, Jones & Henry asks the Court to declare that the Town of Orland is still obligated to continue working with Jones & Henry to complete the wastewater and water projects and is liable to Jones & Henry for the full contract price under the contracts.

*Count II—Quantum Meruit*

. . . .

27. The Town has voluntarily abandoned the wastewater system and water distribution system designed by Jones & Henry, but has refused to pay Jones & Henry for its work.

28. By preparing the preliminary engineering report for the wastewater system and performing under the contract, Jones & Henry has conferred measurable benefits upon the Town, including the obligating of funds in the approximate amount of 4.3 million dollars as a combination of a loan and grant to the Town from the Farmers Home Administration for the completion of the wastewater collection and treatment facility.

29. By preparing the preliminary engineering report for the water distribution system and performing under the contract, Jones & Henry has conferred measurable benefits upon the Town, including the obligating of funds in the approximate amount of $1,352,100 as a combination of a loan and grant to the Town from the Farmers Home Administration for the completion of the water distribution system.

30. The new engineering firm hired by the Town will be able to use large portions of the Jones & Henry design and specifications, saving the Town additional engineering fees.

31. The Town's retention of the benefits conferred upon them without payment to Jones & Henry would be improper, and the Town would be unjustly enriched unless it pays for the work performed by Jones & Henry.

. . . .

*Count III—Abuse of Process*

. . . .

33. In its counterclaim against Jones & Henry and its opposition to Jones & Henry's claims, the Defendant has used process that is not proper in the normal prosecution of the case, including the improper pursuit of a motion to disqualify counsel for Jones & Henry and the maintenance of frivolous, groundless and unreasonable claims and defenses against Jones & Henry in both the main issues of this case as well as discovery disputes between the parties.

34. Defendant has ulterior motives in pursuing the Counterclaim and other actions set forth above, including the advancement of personal and political goals of the representatives of the Town, all of which have no legitimate place in the prosecution of this case.

35. As a direct and proximate result of Defendant's abuse of process, Jones & Henry has incurred substantial damages, including attorneys fees and costs.

. . . .

Record at 152–59. Jones and Orland ultimately entered into a settlement agreement where Orland consented to an entry of judgment against it in the amount of $356,460. The Consent Judgment and Order of Dismissal entered by the federal court on August 11, 1997 further provided that the judgment shall constitute a special obligation of Orland, only to be satisfied from revenues of the future construction of and improvements of the water and sewage facilities.

At all times relevant to the federal lawsuit, Orland was the named insured under the terms and provisions of a Local Government General Liability Policy (the Policy), which contained Errors or Omissions Liability Insurance (the Errors or Omissions Clause), issued by National. Al-

though Orland timely notified National of the federal lawsuit, National refused to defend or indemnify Orland. Subsequently, Orland initiated the instant action by filing its complaint against National, on August 15, 1997, for allegedly breaching its obligation under the Policy to defend and indemnify Orland. Specifically, Orland alleged that the Errors or Omissions Clause covered the allegations in the federal lawsuit. The Errors or Omissions Clause provided in relevant part as follows:

> COVERAGE F—ERORS OR OMISSIONS LIABILITY
>
> The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* on account of any claim for breach of duty made against the *insured* by reason of any negligent act, error or omission, including misfeasance, malfeasance, and nonfeasance, of the *insured* which first occurs during the policy period ... and the company shall have the right and duty to defend any suit against the *insured* seeking *damages* on account of a breach of duty to which this insurance applies, even if any of the allegations of the suit are groundless, false or fraudulent. ...

R. at 22 (emphasis in original). Further, it specifically excluded, under exclusion (f), "any loss to the *insured* or for any loss caused intentionally by or at the direction of the *insured.*" R. at 22 (emphasis in original).

Following discovery, on November 13, 1998, Orland filed a motion for partial summary judgment on the issue of whether National had a duty to defend Orland against Jones' claims. National responded on January 5, 1999 by filing a cross-motion for summary judgment on the same issue. The motions were fully briefed and a hearing was held on March 19, 1999. Thereafter, on March 24, 1999, the trial court denied Orland's motion and granted National's motion for summary judgment, finding that National had no duty to defend Orland in the federal suit. Orland now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

■ The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be decided as a matter of law. *Askren Hub States Pest Control Services, Inc. v. Zurich Ins. Co.*, 721 N.E.2d 270, 274 (Ind. Ct.App.1999). When reviewing a grant or denial of summary judgment, we apply the same standard as the trial court. *Id.* Summary judgment is only appropriate where the designated materials reveal that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Askren*, 721 N.E.2d at 274. When no genuine issues of material fact divide the parties, as in the instant case, we need only determine whether the trial court correctly applied the law to the undisputed facts.[1] *Burnett v. Cincinnati Ins. Co.*, 690 N.E.2d 747, 749 (Ind.Ct.App.1998), *trans. denied.*

■ As with other contracts, the interpretation of an insurance policy is generally a question of law for the courts to decide, even if the policy contains an ambiguity needing resolution. *Tate v. Secura Ins. Co.*, 587 N.E.2d 665, 668 (Ind.1992). Thus, summary judgment is particularly appropriate for the construction of an insurance policy. *Travelers Indem. Co. v. Summit Corp. of Am.*, 715 N.E.2d 926, 930 (Ind.Ct.App.1999).

### II. The Errors or Omissions Clause

#### A. Breach of Contract Claims

■ Orland argues that National had a duty to defend it in the federal lawsuit

---

1. We note that the trial court made findings of fact and conclusions of law in its summary judgment order. While the specific facts and conclusions aid in our review by providing us with a statement of reasons for the trial court's decision, it has no other effect and does not change the nature of our review. *Askren,* 721 N.E.2d at 274.

pursuant to the Errors or Omissions Clause. Initially, Orland notes that an insurance company's duty to defend is broader than its duty to indemnify. *See Employers Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1025 (Ind. Ct.App.1999). Further, Orland apparently contends that the Errors or Omissions Clause applies to any claim for breach of duty, whether it is a breach of a duty of care or breach of a contractual duty. Orland specifically seizes on the term "malfeasance" and reasons that the clause, therefore, clearly provides coverage for something more than mere negligence. Here, Orland argues that a fair reading of the amended complaint establishes that Jones was seeking relief against Orland based upon its "perceived mismanagement of the sewer and water projects." Appellant's Brief at 18.

▮ Under Indiana law, an insurance contract is subject to the same rules of interpretation as other contracts. *Askren*, 721 N.E.2d at 275. If its language is clear and unambiguous, it should be given its plain and ordinary meaning. *Id.* However, if ambiguity exists, we must construe the language strictly against the insurer. *Travelers*, 715 N.E.2d at 936. An ambiguity does not exist merely because the parties proffer differing interpretations of the policy language. *Askren*, 721 N.E.2d at 275. Rather, the policy is ambiguous only if reasonably intelligent persons may honestly differ as to the meaning of the policy language. *See id.*

▮ In the instant case, Orland proposes an unreasonable construction of the Errors or Omissions Clause. As noted above, this clause, entitled "ERRORS OR OMISSIONS LIABILITY," provides coverage for "any claim for breach of duty made against the insured *by reason of* any negligent act, error or omission, *including* misfeasance, malfeasance, and nonfeasance, of the insured...." R. at 22 (emphasis in original omitted and emphasis added). It is apparent that this clause only insures against breaches of duty that arise from a negligent act, negligent error or negligent omission.[2] Thus, clearly not all breaches of duty are covered by the clause. Further, the clause provides misfeasance, malfeasance and nonfeasance as respective examples of these types of covered events. While Orland cites to *Orkin Exterminating Co., Inc. v. Walters*, which states that negligence does not constitute malfeasance,[3] we note that malfeasance is commonly referred to, along with misfeasance and nonfeasance, as an example of negligence. *See, e.g., Serviss v. State, Dept. of Natural Resources*, 721 N.E.2d 234, 236 (Ind.1999) (acknowledging the difficulty in distinguishing between whether a governmental unit was guilty of "an affirmative act of negligence ('malfeasance') or a failure to act ('nonfeasance')"); *Mullen v. Cogdell*, 643 N.E.2d 390, 400 (Ind.Ct.App. 1994) (referring to "actual negligence whether malfeasance, misfeasance or nonfeasance") *trans. denied; Coca–Cola Bottling Co. v. Vendo Co.*, 455 N.E.2d 370, 373 (Ind.Ct.App.1983). Considering the context in which the term is used in the instant clause, a reasonable person could not conclude that the term encompassed more than negligence.

▮ We acknowledge that "[a] duty of care, the breach of which will support a negligence action, may arise contractually." *Perryman v. Huber, Hunt & Nichols,*

---

**2.** We observe that the first exclusion to the Errors or Omissions Clause provides that the insurance does not apply to "any fraudulent, criminal, or malicious act, error or omission[.]" R. at 22. Thus, as "fraudulent, criminal, or malicious" obviously modify the nouns error and omission as well as act, we find that "negligent" as used above similarly modifies these nouns.

**3.** In *Orkin Exterminating Co., Inc. v. Walters*, 466 N.E.2d 55, 58 (Ind.Ct.App.1984), *trans. denied*, we stated that "[n]egligence does not constitute malfeasance." However, in that case, the technical distinction between malfeasance and misfeasance was made because the trial court improperly awarded damages beyond the contract's limitation of liability clause based on its specific finding that the defendant's actions amounted to tortious malfeasance.

*Inc.*, 628 N.E.2d 1240, 1244 (Ind.Ct.App. 1994) (holding, in wrongful death action, that construction management company had assumed duty of care to ensure worker safety at project site, as company had a contractual duty to install safety netting), *trans. denied.* However, this is not such a case. Here, Orland's conduct cannot be characterized as the negligent performance of a contractual duty such that Jones could have brought a negligence action rather than one for breach of contract. Instead, Orland, whether in good faith or not, deliberately made business decisions which caused Jones to question Orland's commitment to the contract and, thus, bring the federal lawsuit. We hold that such conduct does not result in liability under the Errors or Omissions Clause issued by National[4] and decline Orland's invitation to treat the Errors or Omissions Clause as a performance bond. Therefore, the trial court correctly found that National had no duty to defend Orland in the federal lawsuit on the breach of contract claims.

### B.   Abuse of Process Claim

Finally, Orland argues that the intentional act exclusion in the Errors or Omis-

sions Clause does not apply to the abuse of process claim. Specifically, Orland argues that it did not intend to harm Jones through its actions.

■■■■ The tort of abuse of process is comprised of two elements: (1) ulterior purpose or motives; and, (2) a willful act in the use of process not proper in the regular conduct of the proceeding. *Reichhart v. City of New Haven,* 674 N.E.2d 27, 30 (Ind.Ct.App.1996), *trans. denied.* As set forth above, Jones alleged that Orland, in its counterclaim against Jones and its opposition to Jones' claims, improperly pursued a motion to disqualify counsel and maintained frivolous, groundless and unreasonable claims and defenses in both the main issues of this case as well as discovery disputes between the parties. Jones further alleged that Orland took these actions with ulterior motives, including the advancement of personal and political goals of the representatives. We can envision no set of facts where the losses incurred by Jones from abuse of process would not be intended by Orland, as intent is the essence of such a claim.[5] Further, we note that public policy demands that a

---

**4.** Orland cites *Wayne Township Bd. of Sch. Comm'rs v. Indiana Ins. Co.,* 650 N.E.2d 1205 (Ind.Ct.App.1995), *trans. denied,* as a case that "addressed virtually identical policy language and concluded that it covers contractual disputes." Appellant's Brief at 14. Initially, we note that the language was not virtually identical as the policy provided coverage for a "Wrongful Act" which was defined as "any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty including misfeasance, malfeasance and nonfeasance by an Insured, in the performance of duties for the Educational Entity." *Id.* at 1211. Further, we note that the court was confronted with bodily injury arising from a principal's sexual molestation of a student, not with a contractual dispute. In response to a claim that the bodily injury exclusion rendered the policy illusory, the court simply listed contractual disputes, along with pension administration, constitutional claims bases on discrimination among students or employees, and claims of deficiencies in educational programs, counseling or transportation, as an example of an

instance where the school would be protected from liability under the policy. We find the instant case distinguishable from *Wayne Township.*

**5.** This is in sharp contrast to the cases cited by Orland, where the insured is liable for bodily injury to a third party based on negligence, and the insurance company is arguing that the conduct rose to the level of intentional. *See Coy v. Nat'l Ins. Ass'n,* 713 N.E.2d 355 (Ind.Ct.App.1999) (holding that intentional injury exclusion did not apply where no evidence permitted an inference that insured's actions of driving negligently and recklessly while fleeing from police were performed to specifically injure his passenger); *Sans v. Monticello Ins. Co.,* 676 N.E.2d 1099 (Ind.Ct.App.1997) (requiring specificity of intent and finding that trial court erred in determining on summary judgment that as a matter of law the policy's assault and battery exclusion applied where facts most favorable to insured-nonmovant revealed that bartender could have accidentally shot patron), *trans. denied.*

person not be permitted to insure against harms he may intentionally cause others, and thereby acquire a license to engage in such activity. *See Sans,* 676 N.E.2d at 1102. Therefore, we hold that National had no duty to defend Orland on this claim, as Orland cannot obtain a license to abuse process simply by alleging that its ulterior motive was something other than to injure Jones although that would necessarily be a direct result of its actions.

Judgment affirmed.

SULLIVAN, J., and KIRSCH, J., concur.