Richard **BURKETT** and Barbara Burkett, Appellants– Plaintiffs,

v.

**AMERICAN FAMILY INSURANCE GROUP,** American Family Mutual Insurance Company and Marilyn Greer, Appellees–Defendants,

and

Terrance **Prewitt,** Jr., and Terrance **Prewitt,** Sr., Defendants.

No. 49A02–0004–CV–260.

Court of Appeals of Indiana.

Oct. 31, 2000.

---

Michael E. Simmons, Hume Smith Geddes Green & Simmons, LLP, Indianapolis, Indiana, Attorney for Appellants.

Linda H. Hammel, Yarling & Robinson, W. Brent Threlkeld, Neal F. Eggeson, Threlkeld Reynolds, LLP, Indianapolis, Indiana, Attorneys for Appellee.

**OPINION**

RILEY, Judge

*STATEMENT OF THE CASE*[1]

Appellants–Plaintiffs, Richard Burkett and Barbara Burkett (jointly referred to as the Burketts), appeal the trial court's summary judgment granted in favor of the Appellees–Defendants, American Family Insurance Group and American Family Mutual Insurance Company (collectively referred to as American Family), and Terrance Prewitt, Jr. (Prewitt, Jr.). The Burketts also appeal the trial court's denial of their Motion for Summary Judgment.

1. The parties' request for oral argument is hereby denied.

Finally, the Burketts appeal the trial court's Order granting Appellee–Defendant's, Marilyn Greer, Motion for Judgment on the Pleadings.

We affirm.

## ISSUES

The Burketts raise three issues on appeal,[2] two of which we find dispositive and we restate as follows:

1. Whether the trial court erred in interpreting the insurance contract between American Family and George and Marilyn Greer.

2. Whether the tort statute of limitations bars the Burketts' claim against Marilyn Greer.

## FACTS AND PROCEDURAL HISTORY

The undisputed facts of this case are as follows. On October 10, 1995, Richard Burkett was involved in a collision with Prewitt, Jr., in Indianapolis, Indiana. The accident was caused by the negligence of Prewitt, Jr.,[3] and Burkett was seriously injured as a result of this collision. At the time of the collision, Prewitt, Jr., was driving a vehicle owned by Steven Jones (Jones). Jones had insurance coverage for this vehicle with Growers Insurance Company. Additionally, at the time of the collision, Prewitt, Jr., a minor, lived with his grandparents, George and Marilyn Greer, and owned his own automobile which was covered by a policy of insurance issued by the American Standard Insurance Company of Wisconsin.[4]

Both of these insurance companies paid the available policy limits to Richard Burkett and on March 21, 1997, Burkett executed a "General Release." This Release provided in pertinent part:

KNOW ALL MEN BY THESE PRESENTS, that the undersigneds, for the consideration of the sum of One Hundred Thousand Dollars ($100,000.00) paid by American Family Insurance Group, and for the further consideration of One Hundred Thousand Dollars ($100,000.00) paid by Growers Automobile Insurance Association, now forever release and discharge Terrance Prewitt, Jr., ... Marilyn Greer, ... American Family Insurance Group ... from any and all manner of actions, causes of action, suits, accounts, contracts, debts, claims and demands whatsoever, except as otherwise reserved below ...

\* \* \*

This General Release is executed and agreed to, in part, upon the representation that the maximum available automobile liability insurance policy limits available through Growers Automobile Insurance Association are One Hundred Thousand Dollars ($100,000.00), that the maximum available automobile liability insurance policy limits available through American Family Insurance Group are One Hundred Thousand Dollars ($100,-000.00), that Terrance Prewitt, Jr. is eighteen (18) years of age but, although employed, does not own any real estate nor own a vehicle and has no substantial assets other than the aforementioned automobile liability insurance policy coverages. In the event it is later determined that, at the time of the execution of this General Release, other insurance coverage or assets were available and subject to application for satisfaction of

---

2. Because we find that the Burketts did not file their claim against Marilyn Greer within the applicable statute of limitations, we refrain from addressing the third issue raised by the Burketts regarding whether the General Release signed by Richard Burkett released Greer from liability.

3. While American Family concedes that the accident was the fault of Prewitt, Jr., (R. 110)

Greer answered that she was without sufficient information to admit of deny the allegations. (R. 81). Nevertheless, Prewitt, Jr.'s negligence has not been disputed on appeal.

4. American Standard Insurance Company of Wisconsin is a member company of American Family Insurance Group.

the claims of Richard Burkett arising from the aforementioned motor vehicle collision, the undersigneds specifically and explicitly reserve the right to pursue such insurance coverage and/or assets and this General Release shall not be applicable to, nor effective against, the pursuit of such additional recovery even against those parties otherwise released herein.

(R. 69–70).

Thereafter, on October 9, 1997, the Burketts filed a Complaint for Declaratory Judgment against American Family and Prewitt, Jr., claiming that certain other insurance policies issued to George Greer by American Family provided additional coverage for the automobile collision of October 10, 1995. After filing this Complaint, the Burketts learned that Marilyn Greer and Terrance Prewitt, Sr., had signed a financial responsibility affidavit on Prewitt, Jr.'s license application in which they agreed to be responsible for any injuries or damages caused by Prewitt, Jr.'s operation of a motor vehicle. Thus, on March 26, 1998, the Burketts amended their Complaint adding Marilyn Greer and Terrance Prewitt, Sr., as defendants.[5]

On February 1, 1999, Marilyn Greer filed a Motion for Judgment on the Pleadings alleging that the cause of action against her was barred by the statute of limitations and further, that any claims against her had been released by Richard Burkett. On April 20, 1999, the trial court granted this motion.

On September 9, 1999, American Family filed a Motion for Summary Judgment claiming that Prewitt, Jr., was not insured under the Greers' insurance policies with American Family. Specifically, American Family argued that Prewitt, Jr., did not meet the insurance policies definition of the term "relative," and thus, was not covered by the policies. Subsequently, on November 12, 1999, the Burketts filed

their Motion for Summary Judgment arguing that they were entitled to summary judgment on their claims against American Family. Oral argument was held on these motions on January 13, 2000, and on February 2, 2000, the trial court granted American Family's Motion for Summary Judgment and denied the Burketts' Motion for Summary Judgment.

This appeal followed.

## DISCUSSION AND DECISION

### I. Cross Motions for Summary Judgment

The Burketts assert that the trial court improperly granted summary judgment in favor of American Family. American Family moved for summary judgment asserting that the insurance policies insuring vehicles owned by George Greer do not provide additional liability coverage for the collision of October 10, 1995. In its motion, American Family argued that Prewitt, Jr., was not an insured under Greers' policies because he did not meet the definition of the term "relative" as set forth in both policies. The trial court apparently agreed and granted summary judgment for American Family. On appeal, the Burketts argue that the trial court failed to properly interpret the policy language at issue. The Burketts conclude that the trial court should have interpreted the policy language to allow coverage for the collision, and accordingly, the trial court should have granted summary judgment in their favor. We disagree.

### A. Standard of Review for Summary Judgment

■ When reviewing an entry of summary judgment, this court applies the same standard as the trial court. *City of Fort Wayne v. Kotsopoulos,* 704 N.E.2d 1069, 1070 (Ind.Ct.App.1999). "Summary judgment is appropriate when the evidentiary matter designated to the trial court

---

**5.** On December 15, 1999, the parties entered into a Stipulation of Dismissal, dismissing

with prejudice the Burketts' claims against Terrance Prewitt, Sr.

shows both that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Aide v. Chrysler Financial Corp.*, 699 N.E.2d 1177, 1180 (Ind.Ct.App.1998), *trans. denied.* We will affirm a summary judgment on appeal if it is sustainable under any theory or basis found in the evidentiary matter designated to the trial court. *J.S. Sweet Co., Inc. v. White County Bridge Com'n*, 714 N.E.2d 219, 222 (Ind. Ct.App.1999). Additionally, when material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts. *Deaton v. City of Greenwood*, 582 N.E.2d 882, 884 (Ind.Ct.App. 1991). "When there are no disputed facts with regard to a motion for summary judgment and the question presented is a pure question of law, we review the matter *de novo.*" *Mahowald v. State*, 719 N.E.2d 421, 424 (Ind.Ct.App.1999). Consequently, because the interpretation of a contract is a matter of law, cases involving the interpretation of insurance contracts are particularly appropriate for summary judgment. *Westfield Companies v. Rovan, Inc.*, 722 N.E.2d 851, 855 (Ind.Ct.App.2000). Here, the facts of this case are not in dispute, therefore we apply a *de novo* standard of review to the issues presented. *See Id.*

### B. Interpretation of Insurance Contract Language

The Burketts assert that the Greers' insurance policies with American Family provide coverage for the collision. The Burketts argue that the policy language relied on by American Family to avoid coverage is ambiguous, inconsistent and contradictory, and under Indiana law must be construed in favor of coverage.

Insurance contract provisions are subject to the same rules of construction as other contracts. *Great Lakes Chemical Corp. v. International Surplus Lines Ins. Co.*, 638 N.E.2d 847, 850 (Ind.Ct.App. 1994). "When interpreting an insurance policy, our goal is to ascertain and enforce the parties' intent as manifested in the insurance contract." *Id.* In determining the meaning of contract provisions, we consider all of the provisions of the contract and not just individual words, phrases, or paragraphs. *Anderson v. State Farm Mut. Auto. Ins. Co.*, 471 N.E.2d 1170, 1172 (Ind.Ct.App.1984). Thus, the insurance policy must be construed as a whole. *Amica Mut. Ins. Co. v. Cincinnati Ins. Co.*, 494 N.E.2d 358, 360 (Ind.Ct.App. 1986). If the language is clear and unambiguous, it should be given its plain and ordinary meaning. *Town of Orland v. National Fire & Cas. Co.*, 726 N.E.2d 364, 370 (Ind.Ct.App.2000), *reh'g denied, trans. denied.* We also must accept an interpretation of the contract language that harmonizes the provisions rather than one which supports a conflicting version of the provisions. *Anderson*, 471 N.E.2d at 1172. Nonetheless, "[p]olicy terms are interpreted from the perspective of an ordinary policyholder of average intelligence," *Gallant Ins. Co. v. Amaizo Federal Credit Union*, 726 N.E.2d 860, 864 (Ind.Ct.App. 2000), *trans. denied,* and if reasonably intelligent persons may honestly differ as to the meaning of the policy language, the policy is ambiguous. *Town of Orland*, 726 N.E.2d at 370. However, "[a]n ambiguity does not exist merely because the parties proffer differing interpretations of the policy language." *Id.*

The Burketts contend that if an ambiguity exists, we must construe the language strictly against the insurer and in favor of coverage. This is true when a dispute involves an insurer and its insured, *Gallant Ins. Co.*, 726 N.E.2d at 864; *Town of Orland*, 726 N.E.2d at 370; and *Great Lakes Chemical Corp.*, 638 N.E.2d at 850. However, when a case involves a dispute between a third party and an insurer, we determine the general intent of the contract from a neutral stance. *Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.*, 260 Ind. 32, 291 N.E.2d 897 (1973); *American Family Mut. Ins. Co. v. National Ins. Ass'n*, 577 N.E.2d 969, 970

(Ind.Ct.App.1991). The Burketts nevertheless argue that the cases requiring that we review this matter from a neutral stance are inapplicable here because they concern disputes between insurance carriers of apparently equal power. Yet the holdings in the *Indiana Lumbermens Mut. Ins. Co.* and the *American Family Mut. Ins. Co.* decisions were not limited to disputes between insurance carriers, rather the factor distinguishing these cases in which we apply a neutral stance from cases in which we construe the policy language strictly against the insurer, appears to be that the party that was seeking to benefit from a particular interpretation of the insurance contract was not a party to the contract. *Indiana Lumbermens Mut. Ins. Co.,* 291 N.E.2d at 899; *American Family Mut. Ins. Co.,* 577 N.E.2d at 970. Accordingly, we agree with American Family that in this case we are to review the general intent of the insurance contract from a neutral stance. Furthermore, because we conclude that the insurance policies at issue are not ambiguous, we need not construe the contract language.

The dispute here centers around the definition of the term "relative" in the American Family policies and whether Prewitt, Jr., fails to meet this definition.

The policies define an insured person as:

Insured person or insured persons means:

1. You or a **relative.**

2. Any person using your insured car.

3. Any other person or organization. This applies only to legal liability for acts or omissions of:

> a. Any person covered under this Part while using your insured car.

> b. You or any **relative** covered under this part while using any car or utility trailer other than your insured car. This other car or utility trailer must not be owned or hired by the person or organization.

(R. 163–164) (emphasis added).

Further, the policies also define the term "relative" as follows:

**Relative** means a person living in your household, related to you by blood, marriage or adoption. This includes a ward or foster child. **It excludes any person who, or whose spouse, owns a motor vehicle other than an off-road motor vehicle.**

(R. 163) (emphasis added).

The parties agree that Prewitt, Jr., is the grandson of George and Marilyn Greer and that at the time of the collision, Prewitt, Jr., lived in the Greers' household as their ward. However, because at the time of the collision Prewitt, Jr., owned his own automobile, American Family asserts that Prewitt, Jr., does not meet the policies' definition of "relative" and is therefore not an insured. The Burketts contend that this definition of the term "relative" is ambiguous because the word "It" in the last sentence is not properly defined. The Burketts suggest that this word could be referring to several subjects and assert that two possible interpretations are more logical than the one put forth by American Family. Specifically, the Burketts suggest that the word "It" could refer to the subject of the sentence immediately preceding the sentence at issue, which is "ward or foster child," or that the term could refer to the limited definition of "relative" set forth in the first sentence of this paragraph. Thus, the Burketts assert that the sentence could mean that coverage is excluded for a ward or foster child who owns a motor vehicle other than an off-road motor vehicle, but not for other persons living in the insured's household, related to the insured by blood, marriage or adoption. Alternatively, the Burketts suggest the sentence could mean coverage is excluded for persons living in the insured's household, related to the insured by blood, marriage or adoption, who own a motor

vehicle other than an off-road motor vehicle, but not for wards or foster children.

Based on these proposed interpretations, the Burketts submit that Prewitt, Jr., was covered by these policies because he was both a ward of the Greers and a person living in the Greers' household, related by blood, and only one of these two types of relatives are excluded from coverage if they own a motor vehicle. If the policy excludes coverage for persons living in the insured's household, related to the insured by blood, marriage or adoption, who own a motor vehicle, but provides coverage to wards and foster children regardless of whether they own a motor vehicle, Prewitt, Jr., would be covered. On the other hand, if the policy excludes coverage for wards or foster children who own a motor vehicle, but provides coverage to persons living in the insured's household, related to the insured by blood, marriage or adoption regardless of whether they own a motor vehicle, Prewitt, Jr., would also be covered. Thus, the Burketts conclude that under either interpretation, Prewitt, Jr., meets the definition of "relative" and is covered by these policies.

In response, American Family asserts that the last sentence of the definition of the term "relative" means that any "relative" (meaning persons living in the insured's household, related to the insured by blood, marriage or adoption, and wards and foster children), is not provided coverage if they or their spouse own a motor vehicle other than an off-road motor vehicle. In support of its argument, American Family cites *Indiana Lumbermens Mut. Ins. Co. v. Vincel,* 452 N.E.2d 418 (Ind.Ct. App.1983). In *Vincel,* this court concluded that a similar definition of the term "relative" was not against public policy in an uninsured motorist case; however, this decision did not address whether the definition of the term relative was ambiguous. *Id.* at 421. Thus, *Vincel* does not answer the question before us.

Our review found no Indiana cases addressing whether a similar definition of the term "relative" in an insurance policy is ambiguous. However, decisions from other jurisdictions have found that policy language, similar to the language at issue here, to be unambiguous. In *Malo v. Aetna Casualty and Surety Company,* 459 A.2d 954 (R.I.1983), the Rhode Island Supreme Court held that the following definition of relative was clear and unambiguous: "a person related to the named Insured by blood, marriage or adoption who is a resident of the same household, provided neither such relative nor his spouse owns a private passenger automobile." This definition of relative is the exact same wording as in the definition of relative upheld in the *Vincel* case as not against public policy. *See Vincel,* 452 N.E.2d at 421. However, the distinction between the definition of relative in the *Malo* case and the definition in this case is that the exclusionary language, "provided neither such relative nor his spouse owns a private passenger automobile," is included in the same sentence as the general definition of the term. In this case, the exclusionary language ("It excludes any person who, or whose spouse, owns a motor vehicle other than an off-road motor vehicle."), is set forth in a separate sentence. (R. 163). Nonetheless, we conclude that the distinctions between these definitions are inconsequential because the word "It" in the last sentence of the definition of the term "relative" in the policy language at issue clearly refers to the entire definition of the term "relative." Thus, the clear meaning of the policy here is that the definition of the term "relative" excludes any person who, or whose spouse, owns a motor vehicle other than an off-road motor vehicle.

Additionally, the Supreme Court of Connecticut, the Appellate Court of Illinois, and the Court of Appeal of Louisiana have all held that language similar to the policy language at issue in *Malo* to be unambiguous. *Middlesex Insurance Company v. Quinn III,* 225 Conn. 257, 622 A.2d 572 (1993); *American Family Mutual Insur-*

*ance Company v. Kittinger*, 147 Ill.App.3d 586, 101 Ill.Dec. 74, 498 N.E.2d 256 (1986); and *Robertson v. Cumis Insurance Company*, 355 So.2d 1371 (La.Ct.App.1978); *see also Lewis v. American Family Ins. Group*, 555 S.W.2d 579 (Ky.1977) (applying Indiana law, concluding that similar language is not prohibitive). Furthermore, in *McKee v. American Family Mutual Insurance*, 932 S.W.2d 801 (Mo.App.1996), the Missouri Court of Appeals explained that "[t]he purpose of the policy definition of 'relative' as one who does not own a 'motor vehicle' is to provide 'drive-other-cars' liability coverage to a resident relative as long as that relative does not acquire his or her own vehicle." *Id.* at 803 (*citing State Farm Mut. Auto. Ins. Co. v. Rechek*, 125 Wis.2d 7, 370 N.W.2d 787, 789–790 (1985)).[6] Hence, we agree with American Family that the intent of the definition of term "relative" is to exclude from the definition all relatives of the insured, who are living in the insured's household and who owns or whose spouse owns a motor vehicle other than an off-road motor vehicle. The term "It" in the last sentence of the definition clearly refers back to the subject of the paragraph—which is the definition of the term "relative." The interpretations proposed by the Burketts are not reasonable. It is not logical that American Family would exclude one subcategory of relatives from coverage based on vehicle ownership and not exclude the other subcategory. Thus, we find that reasonably intelligent people would not differ as to the meaning of the definition of the term "relative," and therefore, we conclude that the term is clear and unambiguous. *See Town of Orland*, 726 N.E.2d at 370.

The Burketts also argue that the exclusionary language found in the definition of the term "relative" contradicts other portions of the insurance policies at issue. Specifically, the Burketts contend that the portion of the policy defining insured persons contradicts with the definition of "relative." The language at issue defines insured persons in part as:

3. Any other person or organization. This applies only to legal liability for acts or omissions of:

\* \* \*

c. You or any relative covered under this part while using any car or utility trailer other than your insured car. This other car or utility trailer must not be owned or hired by the person or organization.

(R. 163–164). Thus, because Prewitt, Jr., was not driving a vehicle he owned at the time of the collision, the Burketts argue that this section of the policy provides coverage. However, as previously discussed, Prewitt, Jr., does not meet the definition of the term "relative," and this section provides coverage to "You [the insured] or any relative ..." *Id.* Prewitt, Jr., is not the name insured under these polices and does not qualify as a "relative" as the term is defined in the policy. Consequently, this section does not provide coverage to Prewitt, Jr.

Finally, the Burketts assert that it is confusing and ambiguous to include an exclusion in the definition section of the insurance policy. The Burketts however, offer no case law or other authorities in support of this proposition. Furthermore, the definition of the term "relative" in actuality does not contain an exclusion,

6. In *McKee*, the Missouri Court of Appeals found policy language identical to the language at issue here to be not against public policy although the issue of whether the language was ambiguous was not addressed. *Id.* Other decisions have also concluded that the precise language at issue here is not against public policy. *See Carlson v. American Fami-* *ly Ins. Co.*, 223 Ill.App.3d 943, 166 Ill.Dec. 250, 585 N.E.2d 1272 (1992) and *American Family Mut. Ins. Co. v. Kittinger*, 147 Ill. App.3d 586, 101 Ill.Dec. 74, 498 N.E.2d 256 (1986). Without addressing the issue, all of these opinions appear to assume that the language is clear and unambiguous.

rather it defines who qualifies as a "relative," and provides a limited definition to this term. It is our duty to construe an insurance policy as a whole, *Amica Mut. Ins. Co.,* 494 N.E.2d at 360, and if the language is clear and unambiguous, it should be given its plain and ordinary meaning. *Town of Orland,* 726 N.E.2d at 370. Since we have found that the definition of the term "relative" is clear and unambiguous, we further conclude that in construing the policy as a whole, the inclusion of a limitation as to who qualifies as a "relative" within the definition of the term is not confusing and does not create an ambiguity.

 Accordingly, we find that the trial court did not err in granting summary judgment in favor of American Family and in denying the Burketts' Motion for Summary Judgment.

## II. *Greer's Motion for Judgment on the Pleadings*

The Burketts also argue that the trial court erred in granting Marilyn Greer's Motion for Judgment on the Pleadings. In the trial court, in support of her Motion for Judgment on the Pleadings, Greer argued that the Burketts failed to timely file their claim against her within the two (2) year tort statute of limitations. Greer additionally argued that any claims against her have been released by the Burketts. Subsequently, the trial court granted Greer's Motion for Judgment on the Pleadings. On appeal, the Burketts assert that the trial court applied the wrong statute of limitations to this case and that they did not release Greer from liability. We disagree.

### A. *Standard of Review*

 We apply a *de novo* standard of review to a trial court's decision on a mo-

tion for judgment on the pleadings. *Transcontinental Ins. Co. v. J.L. Manta, Inc.,* 714 N.E.2d 1277, 1280 (Ind.Ct.App. 1999), *reh'g denied.* "We will affirm the trial court's grant of a T.R. 12(C) motion for judgment when it is clear from the face of the pleadings that one of the parties cannot in any way succeed under the operative facts and allegations made therein." *Id.* In making this determination we will accept as true the well-pleaded material facts alleged, and we will not affirm if there are any genuine issues of material fact. *Id.* The moving party is deemed to have admitted well-pleaded facts in favor of the nonmovant, and this court will draw all reasonable inferences in favor of the nonmovant. *Id.*

### B. *Applicable Statute of Limitations*

The Burketts argue that the trial court improperly granted Marilyn Greer's Motion for Judgment on the Pleadings. Specifically, the Burketts argue that the statute of limitations applicable to their claim against Greer had not run at the time they filed their Amended Complaint adding Greer as a defendant. Greer and American Family reply that the appropriate statute of limitations applicable to the claim against Greer is the statute of limitations for tort actions.[7] The Burketts assert that the appropriate statute of limitations is the twenty (20) year statute applicable to judgments.[8]

 In every case, the applicable statute of limitations is ascertained by identifying the nature or substance of the cause of action. *Schuman v. Kobets,* 716 N.E.2d 355, 356 (Ind.1999). The Burketts' claim against Greer is based on Prewitt, Jr.'s negligence and seeks to recover damages for the personal injuries he suffered as a

---

7. The statute of limitations for tort actions is found at Ind.Code § 34–11–2–4, which provides as follows: "An action for: (1) injury to person or character, ... must be commenced within two (2) years after the cause of action accrues."

8. Ind.Code § 34–11–2–12 provides: "Every judgment and decree of any court of record of the United States, of Indiana, or of any other state shall be considered satisfied after the expiration of twenty (20) years."

result of the collision at issue. The Burketts contend that Marilyn Greer signed a financial responsibility affidavit for Prewitt, Jr., when Prewitt, Jr., obtained his driver's license. In doing so, Greer agreed as follows:

> An individual who signs an application for a permit or license under this chapter agrees to be responsible jointly and severally with the minor applicant for any injury or damage that the minor applicant causes by reason of the operation of a motor vehicle if the minor applicant is liable in damages.

Ind.Code § 9–24–9–4(a). Thus, the issue here is what statute of limitations applies to actions based on Ind.Code § 9–24–9–4(a) and when did this particular cause of action accrue.

■ The Burketts contend that a claim against an adult co-signer of a financial responsibility affidavit does not become entirely ripe until the liability of the minor-driver is legally established. Thus, under the Burketts' approach, a cause of action under Ind.Code § 9–24–9–4(a) would not accrue until after Prewitt, Jr.'s legal liability was established. In response, Marilyn Greer asserts that a cause of action under this statute accrues on the date the injuries or damage were caused by the minor applicant (Prewitt, Jr.).

The parties acknowledge that this issue is one of first impression in Indiana. However, Greer relies on case law from other jurisdictions in support of her position. Greer cites to a number of out-of-state decisions in which the tort statute of limitations was applied to a similar cause of action. The Burketts contend that these decisions are distinguishable because the language of Indiana's financial responsibility statute differs from the language of the statutes addressed in these out-of-state cases. Thus, a review of these decisions is necessary.

In *Bankers Fire and Marine Ins. Co. v. Sampley,* 304 F.Supp. 523 (E.D.Tenn. 1968), *aff'd* 420 F.2d 300 (6th Cir.1970), the United States Federal District Court for the Eastern District of Tennessee held that the tort statute of limitations applies to an action against the parents of a minor tortfeasor based on Tennessee's financial responsibility statute. The statute in part states " 'any negligence * * * by a minor under the age of 18 * * * shall be imputed to the person who has signed the application of such minor for a permit or license, which person shall be jointly and severally liable with such minor for any damages * * * occasioned by such negligence, * * *.' " *Id.* at 527 (citation omitted). In *Sampley,* the plaintiff argued that the parents agreed to indemnify the minor or act as a surety and thus, the six (6) year contract statute of limitations applied. The district court disagreed and found that the parents instead agreed that their son's negligence would be imputed to them and that they would be jointly and severally liable for the damages caused by their son. *Id.* As a result, the district court held that the tort statute of limitations applied and the cause of action accrued on the day of the accident. *Id.* at 528.

The Kentucky Court of Appeals has also held that the tort statute of limitations applies to actions against a parent based on the state's financial responsibility statute. *Robinson v. Hardaway,* 293 Ky. 627, 169 S.W.2d 823, 824 (1943). The statute at issue in *Robinson* was worded similarly to the statute in *Sampley.* As in *Sampley,* the *Robinson* court concluded that the Kentucky statute imputes negligence to the parent and provides that the parent is jointly and severally liable for the minor's negligence. *Id.* at 824. The *Robinson* court concluded that the cause of action at issue "in its final analysis, [is] an action for injury to the person." *Id.*

In *Levin v. Bourne,* 117 Ohio App. 269, 24 O.O.2d 63, 192 N.E.2d 114 (1962), the Court of Appeals for Ohio also applied the tort statute of limitations to an action based on that state's financial responsibility statute. The court noted that the negligence of the minor is imputed to the one

who signed the application for the minor's license and consequently, the "the responsibility of the minor is attributed to the adult." *Id.* at 271, 192 N.E.2d 114. The court noted that the financial responsibility statute does not establish a cause of action, instead it provides a means to hold a parent responsible for the tortious conduct of his minor child. *Id.* at 272, 192 N.E.2d 114. The court reasoned that a cause of action " 'arises out of the right and the wrong on which the action is based.' " *Id.* at 272, 192 N.E.2d 114 (citations omitted). Therefore, the court concluded that the cause of action was based in negligence and the tort statute of limitation applied. *Id.*

Again, in *Hickman v. Tullos,* 121 F.Supp. 152 (N.D.Ala.1954), the United Stated Federal District Court for Alabama concluded that the tort statute of limitations applies to actions based on Alabama's financial responsibility statute. The district court reasoned:

> If the operator is a minor and his parent is willing that he should operate an automobile and desires that he should receive a license authorizing him to do so, then and in that event the parent may sign the application and in doing so he places himself in the same position and under the same statute of limitations as the operator.

*Id.* at 154. Other jurisdictions have come to the same conclusion as these courts. *See Southern Pacific Transp. Co. v. Dolan,* 27 Cal.App.3d 534, 104 Cal.Rptr. 131 (1972); *Franceschi v. T.C. Scott,* 7 Cal. App.2d 494, 46 P.2d 764 (1935); *McFarland v. Cordiero,* 99 Cal.App. 352, 278 P. 889 (1929); see also *Houston v. Holmes,* 202 Miss. 300, 32 So.2d 138, 139 (1947).

In response, the Burketts assert that this case law is inapplicable because these other state statutes impute negligence and fault to the parents, while Indiana's statute does not. The Burketts claim that Indiana's financial responsibility statute imposes financial responsibility on the signator for the payment of damages result-ing from the minor's negligence, but does not impute negligence. In support of this proposition, the Burketts rely on *Wenisch v. Hoffmeister,* 168 Ind.App. 247, 342 N.E.2d 665, 666 (1976). In *Wenisch,* the father signed a driver's license application for his minor son. *Id.* at 666. Thereafter, the son was involved in an automobile accident with another vehicle driven by Hoffmeister. *Id.* The father sued Hoffmeister for property damage to his vehicle and she counterclaimed for the property damage to her vehicle. *Id.* The trial court found both the son and Hoffmeister to have been negligent and entered judgments denying both claims. *Id.* The trial court also found that the son's negligence was imputable to the father because the father signed the son's application for a driver's license. *Id.* On appeal, the father argued that the son's negligence was not imputable to him and as a result, the trial court improperly denied his claim against Hoffmeister for the property damage to his vehicle. *Id.* We reversed and concluded that the financial responsibility statute does not impute negligence, rather the statute imputes liability. *Id.*

In discussing the rationale behind this holding we noted:

> Statutes similar to that of Indiana which create such vicarious liability have been judicially construed. It has been held that such statutes may not be construed to impute contributory negligence so as to bar the parent-owner's claim for property damage, even though those statutes have perhaps been inaccurately said to provide for imputation of negligence.

> \* \* \*

> 'These statutes were designed solely to protect innocent third parties from the negligence of a minor driver by providing financial responsibility; there are no provisions therein that may be reasonably construed to deny an owner the right to recover for a wrong done to him.'

*Id.* at 666–667 (*quoting Phillips v. Tooele City Corp.*, 28 Utah 2d 223, 500 P.2d 669 (1972)).

Thus, the *Wenisch* case addressed whether a minor's negligence can be imputed to the parent/signator under the financial responsibility statute to preclude the parent/signator from recovering for property damage to his or her vehicle. The conclusion that liability rather than negligence is imputed was determined in that context. Therefore, we do not find that *Wenisch* precludes us from relying on the out-of-state case law previously addressed.[9] Moreover, we find that the financial responsibility statutes of the other states mentioned to be quite similar to Indiana's statute. Further, these statutes all have in common the same public policy, that is to protect innocent third parties from the negligence of a minor driver by providing financial responsibility. *See Id.* at 667.

Consequently, we agree with the *Robinson* court that in a case such as this, the cause of action at issue is a negligence action for personal injuries. *See Robinson*, 169 S.W.2d at 824. The signator agrees to be liable for damages caused by the negligent conduct of a minor while operating a motor vehicle; however, the basis of the action is in tort. Here, the Burketts are seeking damages from Marilyn Greer for their injuries as a result of Prewitt, Jr.'s negligence. Because this action sounds in tort, we conclude that the two (2) year statute of limitations for tort actions applies to this case. *See* Ind.Code § 34–11–2–4.

The accident between Richard Burkett and Prewitt, Jr., occurred on October 10, 1995. The Burketts filed suit against Prewitt, Jr., on October 9, 1997. However, they did not add Marilyn Greer as a defendant until March 26, 1998. Thus, as we have concluded that the two (2) year statute of limitations for tort actions applies to this case, we further conclude that the Burketts failed to timely file their claim against Marilyn Greer and therefore, their claim is barred. *See* Ind. Code § 34–11–2–4.

### CONCLUSION

Based on the foregoing, we conclude that the definition of the term "relative" in the insurance polices at issue is unambiguous. Accordingly, we find that the trial court did not err in granting summary judgment in favor of American Family and in denying the Burketts' Motion for Summary Judgment. Further, we conclude that the tort statute of limitations, Ind. Code § 34–11–2–4, is applicable to actions against a signator under the financial responsibility statute, Ind.Code § 9–24–9–4(a).

Affirmed.

BARNES, J., and BAILEY, J., concur.

---

**9.** The Burketts also rely on our decision in *Clark v. Estate of Slavens*, 687 N.E.2d 246, 250–251 (Ind.Ct.App.1997) (*abrogated by Indiana Farmers Mut. Ins.Co. v. Richie*, 707 N.E.2d 992, 995–996 (Ind.1999)(holding that failure to open estate for defendant within tort statute of limitation not fatal to suit)). In *Clark*, we affirmed summary judgment in favor of a signator under the financial responsibility statute, where the injured motorist failed to timely request the appointment of a personal representative for the estate of the deceased minor tortfeasor. The *Clark* decision did not determine which statute of limitations applied to such an action, but rather concluded that the injured motorist's cause of action against the signator was barred because the action was dependant on determining the liability of the minor. Since the motorist failed to timely request an appointment of a personal representative for the minor, an action against the minor's estate was time barred, and thus, the signator could not be held liable.