STATE FARM INSURANCE COMPANIES, Appellant,

v.

Gary SEEFELD, Kelly Seefeld, Kimberly K. Smith, Craig J. Smith, Respondents.

No. C4–90–2612.

Court of Appeals of Minnesota.

June 18, 1991.

Review Granted Aug. 29, 1991.

Kay Nord Hunt, V. Owen Nelson, Lommen, Nelson, Cole & Stageberg, Minneapolis, for State Farm Ins. Companies.

John T. Anderson, Anderson & Geisheke, P.A., Minneapolis, for Gary Seefeld, and Kelly Seefeld.

David W. Skogerboe, Skogerboe & Skogerboe, Chtd., Blaine, for Kimberly K. Smith, and Craig J. Smith.

Considered and decided by AMUNDSON, P.J., and HUSPENI and MULALLY\*, JJ.

## OPINION

AMUNDSON, Judge.

Appellant challenges the declaratory judgment that a homeowner's insurance policy provides coverage for injuries sustained by respondent in an all-terrain vehicle accident. Respondents seek review of the trial court's conclusion that the utility trailer towed by the all-terrain vehicle was a motor vehicle as defined in the insurance policy. We reverse.

## FACTS

Appellant State Farm Insurance Companies (State Farm) insured respondent Gary Seefeld under a homeowner's liability insurance policy covering his mobile home. In June 1985, his daughter, respondent Kelly Seefeld, and her friend, respondent Kimberly Smith, took the Seefeld family's 250cc four-wheel all-terrain vehicle for a ride on a township road adjacent to the Seefeld property. The all-terrain vehicle towed a two-wheel utility trailer that Gary Seefeld was in the process of designing and constructing. The trailer at this stage of development was attached to the all-terrain vehicle by inserting a bolt through the makeshift trailer hitch without using a cotter pin.

Kelly drove the all-terrain vehicle and Kimberly rode in the trailer. The bolt came out and the trailer detached, causing injury to Kimberly. Kimberly and her father, respondent Craig Smith, commenced a tort action against Gary and Kelly Seefeld. The complaint alleged that Kelly negligently drove the vehicle and Gary negligently designed, constructed and inspected the trailer.

The Seefelds tendered the defense of this action to State Farm. State Farm subsequently commenced a declaratory judgment action requesting a determination whether it had an obligation to defend or indemnify the Seefelds for the defective design claims asserted by the Smiths.

After a court trial, the trial court entered judgment for respondents, holding State Farm was obligated to provide coverage for Kimberly Smith's injuries. The trial court concluded the all-terrain vehicle and the utility trailer were motor vehicles as defined in the policy and any driving negligence was excluded from coverage. The trial court found coverage, however. It determined the negligent design and construction of the trailer was a nonvehicle-related concurrent cause of Kimberly's injuries, and therefore did not fall within the motor vehicle exclusion.

State Farm appeals the trial court's judgment finding coverage. Respondents in turn seek review of the trial court's deter-

---

\* Retired judge of the District Court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art VI, § 2.

mination that the utility trailer was a motor vehicle, as defined in the insurance policy and thus not covered.

## ISSUES

I. Did the trial court err in determining the utility trailer is a motor vehicle as defined in the mobile homeowner's insurance policy and excluded from coverage?

II. Did the trial court err in determining State Farm is obligated to provide coverage for the injuries under the homeowner's insurance policy despite the motor vehicle exclusion?

## ANALYSIS

### I.

The interpretation of the language of an insurance contract is a question of law which this court will review de novo on appeal. *Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 886–87 (Minn.1978).

 The first issue we face is whether the utility trailer is a motor vehicle. This determination is crucial because Gary Seefeld's mobile homeowner's policy excludes liability for injuries arising out of the ownership or use of a motor vehicle. The policy provides:

1. Coverage L [personal liability] and Coverage M [medical payments to others] do not apply to:

\*　　\*　　\*　　\*　　\*　　\*

e. bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of:

\*　　\*　　\*　　\*　　\*　　\*

(2) a motor vehicle owned or operated by, or rented or loaned to an insured.

The insurance policy defines a "motor vehicle" as:

6a. a motorized land vehicle designed for travel on public roads or subject to motor motor vehicle registration \* \* \*;
b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat,

camp, home or utility trailer not being towed by or carried on a vehicle included in 6a is not a motor vehicle;
c. a motorized golf cart, snowmobile, or other motorized land vehicle owned by an insured and designed for recreational use off public roads, while off an insured location;

\*　　\*　　\*　　\*　　\*　　\*

e. any vehicle while being towed by or carried on a vehicle included in 6a, 6b, 6c, or 6d.

We conclude the utility trailer is a motor vehicle as defined in the insurance policy. Under the clear terms of the policy, the trailer was being towed by a vehicle described in paragraph 6c; thus pursuant to paragraph 6e, the trailer is a motor vehicle. Accordingly, we conclude the trial court correctly determined the utility trailer is a motor vehicle and therefore excluded under the mobile homeowner's policy.

Respondents argue paragraph 6b of the policy controls. They assert the trailer was not a motor vehicle because it was not being towed by a vehicle designed for travel on public roads or subject to motor vehicle registration, that is, a vehicle included in paragraph 6a. We disagree. At the time of the accident, the all-terrain vehicle was subject to registration. For statutory purposes, the four-wheel all-terrain vehicle was a "three-wheel off-road vehicle." Minn.Stat. § 84.92 (1984) (includes vehicles of not less than three nor more than six tires). After January 1, 1985, a person could not operate a "three-wheel off-road vehicle" unless the vehicle was registered. Minn.Stat. § 84.922 (1984). Thus, even under respondents' theory, the utility trailer is a motor vehicle according to the policy's definition.

### II.

 Kimberly Smith seeks to obtain coverage under the general liability provisions of Gary Seefeld's mobile homeowner's insurance policy. The policy excludes coverage for any injury arising out of the "ownership, maintenance, use, loading or unloading of \* \* \* a motor vehicle." Smith alleges the negligent design and construc-

tion of the utility trailer was an independent nonvehicle-related cause of her injuries that does not fall within the motor vehicle exclusion.

Coverage by homeowner's insurance policies for vehicle-related injuries was recognized in Minnesota by *Waseca Mut. Ins. Co. v. Noska*, 331 N.W.2d 917 (Minn.1983). In *Noska*, the insured drove to his home and shoveled ashes into steel barrels containing burnt material. As the barrels were being towed to a landfill, sparks flew from the barrels causing massive fire damage. The supreme court concluded the insured's negligence was divisible into two independent concurrent causes, one nonvehicular (shoveling ashes at the insured's home) and the other vehicular (sparks flying from the barrels as towed by a truck). Thus, the court held the homeowner insurer could not deny coverage based on the motor vehicle exclusion. *Id.* at 923.

In *North Star Mut. Ins. Co. v. Johnson*, 352 N.W.2d 791 (Minn.App.1984), it was alleged the insured was negligent in driving and in failing to secure a chemical sprayer arm bolted to his truck. The sprayer suddenly extended and smashed into an oncoming car. This court held the insured's alleged negligence in failing to secure the sprayer arm was an independent act, not related to the operation or use of the vehicle. *Id.* at 794. Thus, we determined the insured's farm liability policy provided coverage. In so holding, we noted the insurance policy specifically covered the farm sprayer. However, in this case, State Farm did not separately set out to insure the utility trailer.

This court also addressed the issue of concurrent causes in *Auto–Owners Ins. Co. v. Selisker*, 435 N.W.2d 866 (Minn.App. 1986). We held the failure to take seizure medication before driving an automobile was not a divisible concurrent cause from the negligent driving. *Id.* at 868. Thus the homeowner's insurance policy did not provide coverage. In *Selisker*, we discussed the fact that the two acts were only capable of having been done by one person, thus the acts were not divisible in the same sense that the acts in *Noska* were divisible.

However, we conclude insurance coverage cannot be determined solely on the number of potential actors involved. Rather, the focus should be on the degree of interdependence between the acts. What is material is whether the design and construction of the utility trailer is a divisible nonvehicle-related act distinct from the use of the all-terrain vehicle.

In this case there were two acts, each of which was necessary to cause the accident. It is conceded the driving of the all-terrain vehicle was a vehicle related act. Thus, the crucial question is whether the utility trailer's design and construction involved the "ownership, maintenance, use, loading or unloading of * * * a motor vehicle." If the design and construction of the trailer is an independent nonvehicle-related act, the risk will be covered under the mobile homeowner's policy. *See Noska*, 331 N.W.2d at 921.

The trial court concluded State Farm was obligated to provide coverage for Kimberly Smith's injuries because the negligent design and construction of the utility trailer was a concurrent nonvehicle-related cause of her injuries, which came within the general liability provisions of the mobile homeowner's policy. We disagree.

It is undisputed the trailer was at all times owned by Gary Seefeld; hence the trailer's design and construction necessarily involves "ownership." Additionally, such work arose out of the vehicle's "use." The connection between use and injury is something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury. *Tlougan v. Auto–Owners Ins. Co.*, 310 N.W.2d 116, 117 (Minn.1981). It is enough if the injury is a natural and reasonable incident or consequence of the use of a vehicle. *Id.* Therefore, since the trailer's design and construction involved both "ownership" and "use" of a motor vehicle, the mobile homeowner's policy does not provide coverage for Kimberly Smith's injuries.

Even if we determined the trailer's design and construction did not involve its "ownership" and "use", our result would

not be different. The nonvehicle-related cause must be *independent* of the vehicle-related cause to invoke coverage under the homeowner's policy. *Noska,* 331 N.W.2d at 921. We find persuasive the reasoning set forth in *State Farm Fire & Cas. Co. v. Camara,* 63 Cal.App.3d 48, 133 Cal.Rptr. 600 (1976).

In *Camara,* the insured negligently redesigned and reconstructed his automobile into a dune buggy. As he negligently drove the dune buggy, it overturned causing injury to his passenger. The passenger sought coverage under the insured's homeowner's policy. The court denied coverage, holding the insured's design and construction of the dune buggy arose out of the ownership, maintenance, operation or use of a motor vehicle. The court stated the injury did not involve an instrumentality other than and separate from the vehicle itself. Id. at 54, 133 Cal.Rptr. at 603. The accident would not have happened but for the insured's design and construction of the dune buggy. Thus the nonvehicle-related cause was not independent of the vehicle-related cause. Any contributing design cause necessarily arose out of the operation or use of the motor vehicle.

The *Noska* decision relies in part on another California case, *State Farm Mut. Auto Ins. Co. v. Partridge,* 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973). In *Partridge,* the insured modified his gun to possess a "hair trigger." While hunting rabbits from his car, he hit a bump and the gun discharged injuring a passenger. Recovery under the insured's homeowner's policy was allowed in spite of an automobile exclusion. The court reasoned the negligent act of filing the trigger was not related to the use of an automobile because the gun could have been discharged as the insured was walking down the street, and any resultant damage would have been covered by the policy. Id. at 103, 109 Cal. Rptr. at 817, 514 P.2d at 129. Thus, the nonvehicle-related conduct existed independently of any operation or use of a motor vehicle.

In contrast to *Noska,* the injury in this case did not involve an instrumentality other than and separate from the vehicle itself. The negligent operation of the all-terrain vehicle was not the sole cause of the accident. The accident would not have happened but for the insured's design and construction of the trailer. Thus any contributing design cause depended upon taking corporeal form in the construction of the trailer and the operation of the all-terrain vehicle. It is axiomatic that any liability for negligent design necessarily arose out of the operation of a motor vehicle. In other words, the only way in which Kimberly Smith could have been exposed to the design risk was through the use of a motor vehicle. Therefore, the homeowner's policy excludes coverage.

This result is in accord with the reasonable expectations of the parties. This is an extraordinary fact situation in which Gary Seefeld could not have reasonably expected coverage by his mobile homeowner's policy. State Farm agreed to protect Seefeld against liability occurring from nonvehicle-related risks. Because the injuries to Kimberly Smith resulted from two vehicle-related concurrent causes, the mobile homeowner's insurance policy precludes coverage.

## DECISION

The trial court erred in determining State Farm was obligated to provide coverage for the injuries sustained by Kimberly Smith under the mobile homeowner's insurance policy issued to Gary Seefeld.

Reversed.