**HOOSIER INSURANCE COMPANY,**
**Appellant–Plaintiff,**

**v.**

**AUDIOLOGY FOUNDATION OF AMERICA and American Speech–Language Hearing Association, Appellee–Defendant.**

No. 79A04–0004–CV–144.

Court of Appeals of Indiana.

April 9, 2001.

Rehearing Denied June 6, 2001.

John T. Hume, III, Edward F. Harney, Jr., Hume, Smith, Geddes, Green & Simmons, LLP, Indianapolis, IN, Robert F. Johnson, Lee Anne N. Conta, Cook & Franke S.C., Milwaukee, WI, Attorneys for Appellant.

Robert M. Gippin, Karen Kelly Grasso, Thompson, Hine & Flory, LLP, Cleveland, OH, Thomas H. Busch, Hoffman, Luhman & Busch, Lafayette, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary

Hoosier Insurance Company ("Hoosier") appeals the trial court's order denying its

motion for summary judgment and granting Audiology Foundation of America's ("AFA's") cross-motion for partial summary judgment. We affirm.

## Issues

Hoosier raises three issues for our review which we restate as whether the trial court erred when it denied its motion for summary judgment and granted AFA's cross-motion for partial summary judgment with respect to:

1. Whether the advertising injury provisions of Hoosier's policy provide coverage to AFA for claims of false advertising, false designation of origin, and unfair competition;

2. Whether coverage is excluded under the policy's "knowledge of falsity" provision; and

3. Whether AFA can proceed on a bad faith claim against Hoosier based on Hoosier's denial of coverage or the stipulation it entered into with the American Speech Language Hearing Association ("ASHA").

## Facts and Procedural History [1]

### The Insurance Policy

AFA is a not-for-profit corporation based in West Lafayette. At one time, AFA promoted a re-credentialing program where, for a fee, it would review documentation from a practicing audiologist and confer a credential of Doctor of Audiology, or Au.D., upon him or her based on his or her education and practical experience. The re-credentialing program was intended to be temporary, lasting only until the time that AFA anticipated that the Au.D. would be the standard entry-level degree

for audiologists. AFA obtained an insurance policy with Hoosier which contained coverage and exclusions with respect to business liability, including advertising injury liability. There were a total of three policies issued, one for each of the following policy periods: August 1, 1995 to August 1, 1996; August 1, 1996 to August 1, 1997; August 1, 1997 to August 1, 1998.[2]

The coverage portion of the policy stated that "[Hoosier] will pay those sums that [AFA] becomes legally obligated to pay as damages because of ... 'advertising injury' to which this insurance applies. [Hoosier] will have the right and duty to defend any 'suit' seeking those damages. [Hoosier] may at our discretion investigate any 'occurrence' and settle any claim or 'suit' that may result." R. 85. Further, the policy stated that the insurance applied to an " 'advertising injury' caused by an offense committed in the course of advertising [AFA's] goods, products or services...." *Id.* However, the policy also identified exclusions, and stated that the insurance did not apply, among other things, to an advertising injury that arose "out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity...." R. 89.

An advertising injury was defined in the policy as meaning:

[I]njury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

---

1. Oral argument was held in Indianapolis, Indiana on March 8, 2001.

2. Additionally, it appears that each of the three policies were identical with respect to

the advertising injury liability coverage and exclusion provisions. Because the policies appear before us numerous times, we will cite to the first policy provided to us in the record.

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

R. 93.

### The Underlying Action, ASHA v. AFA

As a result of its re-credentialing program, AFA was sued by ASHA in the United States District Court for the District of Maryland. In its complaint against AFA, ASHA alleged that the activities engaged in by AFA constituted "false advertising, false designation of origin, and unfair competition in violation of Section 43(a) of the federal Lanham Act and the common law of the State of Maryland." R. 44.[3]

### The Declaratory Judgment Action, Hoosier v. AFA

AFA notified Hoosier of ASHA's suit against it. Thereafter, Hoosier issued a preliminary letter to AFA which stated, "[b]ased upon a review of the policies issued by Hoosier, the complaint and the applicable facts provided to date, the policies do not provide coverage for the claims alleged in the complaint." R. 96. Hoosier additionally informed AFA in this letter that there were a number of reasons that coverage could be reduced or excluded, among them, the fact that the complaint did not seek damages; that there was not an advertising injury; that the policy excluded an advertising injury that arose out of material done by or at the direction of the insured with knowledge of its falsity or the willful violation of a penal statute or ordinance committed with the consent of the insured; and that the claims alleged in the complaint were barred to the extent that they seek indemnity in excess of the applicable limits of the policies. The letter also directed that in order for Hoosier to complete its evaluation of the claim, AFA needed to provide Hoosier with specific information and documents. AFA did forward basic information about AFA and copies of its newsletters to Hoosier.

Hoosier responded to AFA by stating that none of the offenses listed under the definition of advertising injury were alleged in ASHA's complaint and therefore, its initial position remained unchanged and it was denying coverage. After further correspondence between AFA and Hoosier, Hoosier filed a complaint for declaratory judgment against both AFA and ASHA seeking a determination that the policies did not provide coverage for the claims alleged by ASHA and thus, Hoosier did not have a duty to defend or indemnify AFA in the underlying action.

Before AFA filed an appearance in the declaratory judgment action, Hoosier entered into a stipulation with ASHA which stated that ASHA was not seeking money damages in the underlying action. The stipulation was filed with the trial court and ASHA was dismissed from the declaratory judgment action. AFA was not a party to the stipulation.

AFA filed an answer and a counterclaim alleging that Hoosier had the duty to defend and indemnify AFA for the claims asserted in the underlying action and that Hoosier acted in bad faith in denying AFA a defense or indemnification.

Hoosier filed a motion for summary judgment, asserting that there was no genuine issue of material fact in that: none of the claims fell within the coverage of the

---

**3.** According to AFA's brief, the action between ASHA and AFA was settled and "[n]o judgment was taken by either party and nei- ther party paid the other's costs." Brief of Appellee Audiology Foundation of America at 7.

Hoosier policies, the knowledge of falsity exclusion applied, and ASHA was not seeking damages within the meaning of the policies; thus, Hoosier contended that it did not have a duty to defend or indemnify AFA and was entitled to judgment in its favor on its complaint as a matter of law. Additionally, Hoosier requested summary judgment in its favor on AFA's counterclaim for bad faith. AFA subsequently filed its motion in opposition to Hoosier's motion for summary judgment and its cross-motion for partial summary judgment. AFA asserted that there was no genuine issue of material fact in that: the claims alleged by ASHA constituted advertising injuries of either misappropriation of style of doing business or infringement of copyright, title or slogan, the knowledge of falsity exclusion did not apply, and ASHA did seek money damages in the underlying action; therefore, AFA contended that Hoosier was obligated to defend or indemnify AFA in the underlying action and AFA was entitled to judgment as a matter of law. Further, AFA asserted that it should be allowed to pursue its bad faith claim against Hoosier.

After oral argument before the trial court, the trial court denied Hoosier's motion for summary judgment and granted AFA's cross-motion for partial summary judgment on Hoosier's complaint for declaratory judgment. The trial court stated, in its order, that it found "no genuine issues of material fact concerning the coverage to be afforded to AFA under the Hoosier policy, but [found] such issues concerning AFA's allegations of bad faith concerning Hoosier." R. 214. Essentially, the trial court granted summary judgment in favor of AFA on Hoosier's complaint and denied summary judgment to Hoosier on AFA's counterclaim regarding bad faith. Thus, the only remaining claim between the parties is the bad faith claim. Hoosier now appeals.

Additional facts will be provided as necessary.

*Discussion and Decision*

### I. Standard of Review

The purpose of summary judgment is to end litigation where no factual dispute exists and which may be determined as a matter of law. *Choung v. Iemma*, 708 N.E.2d 7, 11 (Ind.Ct.App.1999). On review of a trial court's decision to grant or deny summary judgment, our standard of review is well settled. We apply the same standard of review as the trial court: we must decide whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Fawcett v. Gooch*, 708 N.E.2d 908, 909 (Ind.Ct.App.1999).

Summary judgment is appropriate only if "the evidence sanctioned by Ind. Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law." *Id.* (citing *Blake v. Calumet Constr. Corp.*, 674 N.E.2d 167, 169 (Ind. 1996)). The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Choung*, 708 N.E.2d at 11. Once these two requirements are met by the moving party, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts. *Id.* Any doubts as to any facts or inferences to be drawn therefrom will be resolved in favor of the non-moving party. *Id.*

Additionally, the trial court's specific findings of fact and conclusions of law are not required in the summary judgment context, and although they offer valuable insight into the trial court's rationale for

its judgment and facilitate our review, they are not binding on us. *Bernstein v. Glavin*, 725 N.E.2d 455, 458 (Ind.Ct.App. 2000), *trans. denied.* Further, the fact that the parties make cross-motions for summary judgment does not alter our standard of review. *Freidline v. Civil City of South Bend*, 733 N.E.2d 490, 493 (Ind.Ct.App.2000).

## II. *Grant of Summary Judgment— Advertising Injury Provision*

Hoosier argues that the trial court's decision that Hoosier had a duty to defend and indemnify AFA was erroneous because the policy held by AFA does not provide liability coverage for the claims alleged by ASHA in the underlying action. Hoosier contends that the claims ASHA asserted against AFA did not arise out of an advertising injury offense enumerated in the policy, and thus, the policy does not provide coverage for AFA's claim. Therefore, Hoosier argues that summary judgment in its favor on this issue was appropriate.

An insurance company's duty to defend is broader than its coverage for liability or its duty to indemnify. *Indiana Farmers Mut. Ins. Co. v. Ellison*, 679 N.E.2d 1378, 1381–82 (Ind.Ct.App.1997), *trans. denied.* "The duty to defend is determined from the allegations of the complaint and from the facts known or ascertainable by the insurer after an investigation has been made." *Id.* at 1382. If the pleadings fail to disclose a claim within the coverage limits, or one which is clearly excluded under the policy, and investigation reveals that the claim is outside the coverage of the policy, no defense is required. *Id.* As a matter of law, however, the insurer has a duty to conduct a reasonable investigation into the facts underlying the complaint before it may refuse to defend the complaint. *Monroe Guar. Ins.*

*Co. v. Monroe*, 677 N.E.2d 620, 624 (Ind. Ct.App.1997), *trans. dismissed.*

In the underlying action, ASHA alleged complaints against AFA for false advertising, false designation of origin, and unfair competition under the Lanham Act and Maryland common law. ASHA claimed that AFA used the terms "Doctor of Audiology" or "Au.D." in commercial advertising of its credentialing services in brochures, newsletters, booklets, on its web site, and in the dissemination of material like lapel pins, and that the use of the term Doctor of Audiology is a commercial advertisement. ASHA asserted, among other things, that the use of the term "Doctor of Audiology" misrepresents the nature of AFA's credentialing services because it imparts a false message that the AFA credential is an academic degree. Further, ASHA alleged that the use of the word "doctor" in connection to one who had not earned the degree falsely leads one to believe that the audiologist did earn his or her doctoral degree. ASHA also alleged that AFA's use of "Doctor of Audiology" is a deliberate attempt to pass off its credential as an earned degree and thus constitutes a false designation of origin. With respect to its unfair competition allegations, ASHA claimed that the use of the term "Doctor of Audiology" gave AFA an unfair advantage in its competition with ASHA.

Hoosier's "advertising injury" policy provision provides that "[Hoosier] will pay those sums that [AFA] becomes legally obligated to pay as damages because of . . . 'advertising injury' to which this insurance applies. [Hoosier] will have the right and duty to defend any 'suit' seeking those damages." R. 85. The policy later defines an advertising injury as an:

> injury arising out of one or more of the following offenses:
> * * *

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

R. 93.

■■■ Because insurance policies are contracts between parties, the law of contracts applies when determining policy liabilities. *Davidson v. Cincinnati Ins. Co.*, 572 N.E.2d 502, 505 (Ind.Ct.App.1991), *trans. denied.* Ambiguous terms in an insurance policy are to be construed against the insurer. *American States Ins. Co. v. Kiger*, 662 N.E.2d 945, 947 (Ind. 1996). "This is particularly true where a policy excludes coverage." *Id.* (citation omitted). Our Supreme Court was clear in its holding, stating that "[t]his strict construal against the insurer is driven by the fact that the insurer drafts the policy and foists its terms upon the customer. 'The insurance companies write the policies; we buy their forms or we do not buy insurance.'" *Id.* (quoting *American Econ. Ins. Co. v. Liggett*, 426 N.E.2d 136, 142 (Ind.Ct. App.1981)). Therefore, the insurer is bound by the plain, ordinary meaning of the words as viewed from the perspective of the insured. *Cincinnati Ins. Co. v. BACT Holdings, Inc.*, 723 N.E.2d 436, 439 (Ind.Ct.App.2000), *trans. denied.*

■■■ The analysis of an advertising injury liability provision presents a case of first impression in Indiana state courts. However, after the trial court issued its summary judgment order in this case, the Federal Court for the Southern District of Indiana issued an opinion addressing the definition of "advertising injury" in an insurance policy, specifically the provisions of "misappropriation of advertising ideas or style of doing business" and "infringement of copyright, title or slogan." *Heritage Mut. Ins. Co. v. Advanced Polymer Technology, Inc.*, 97 F.Supp.2d 913 (S.D.Ind.2000).[4] The provision at issue in *Advanced Polymer* was, in relevant aspects, identical to the provision in the Hoosier policy.

In *Advanced Polymer*, coverage under an advertising injury liability provision was denied for patent infringement, unfair competition, and false designation of origin claims. 97 F.Supp.2d at 937. With respect to "misappropriation of . . . style of doing business,"[5] *Advanced Polymer* acknowledged that courts often disagree about the breadth of the term "misappropriation." *Id.* at 926. Some courts have construed it narrowly, to track the common-law tort of misappropriation, while others broadly define it in its lay sense to mean "to take wrongfully." *Id.* (citations omitted). The *Advanced Polymer* court concurred "with the vast majority of courts" that style of doing business is defined as "a company's comprehensive manner of operating its business." *Id.* at 928.

Hoosier alleges that the claims alleged by ASHA in the underlying action do not fall within the "misappropriation of style of doing business" provision of the policy. Based on the *Advanced Polymer* decision, Hoosier argues that ASHA is not complaining that AFA misappropriated its style of doing business, or its comprehensive manner of operating its business. Rather, Hoosier asserts that ASHA's allegations refer to the fact that AFA was

---

**4.** Because we hold that coverage was proper under the misappropriation of style of doing business provision, we need not address whether or not coverage would also exist under the infringement of copyright, title, or slogan provision.

**5.** Because AFA only alleges that the claims fall within the misappropriation of style of doing business, we will not discuss the misappropriation of advertising ideas. *Advanced Polymer* noted that the clause actually incorporated two separate injuries. *Id.* at 926.

conferring a Doctor of Audiology credential as a valid academic degree, when in actuality, it was not. Further, Hoosier claims that ASHA could not have been complaining that AFA had misappropriated its manner of doing business because ASHA is not in the business of selling or advertising degrees. We disagree.

ASHA is a non-profit professional association and has been issuing credentials since 1952. These credentials are issued by ASHA to individuals for entry-level practice in audiology and speech-language pathology. AFA, also a not-for-profit corporation, was established in 1988. AFA, its members, and other audiologists seek to raise the entry-level degree of audiologists to that of a doctor of audiology, or Au.D. Thus, AFA also issued credentials. Neither ASHA nor AFA issue degrees, only credentials. Based on dates alone, it is clear that AFA was an upstart, created years after ASHA.

Based on the *Advanced Polymer* definition of style of doing business, a company's comprehensive manner of operating its business, it is clear that ASHA's complaint about AFA and its issuance of the Au.D. credential would reasonably fall under the policy provision of "misappropriation of ... style of doing business." AFA was started after ASHA. Both are professional associations which issue credentials to audiologists.

Although *Advanced Polymer* found no coverage under the misappropriation of style of doing business provision under the facts presented therein, the case at hand is distinguishable in that we are dealing with claims by and against two very similar associations. The *Advanced Polymer* court, with respect to the misappropriation of style of doing business, dealt primarily with patent infringement and unfair competition; there, none of the allegations fell within the ambit of style of doing business,

unlike the case at hand. In *Advanced Polymer,* the court noted that nowhere in the underlying complaint was the court informed of nature of the business, the number of products produced, whether the product advertised represents a similar product, or how the company operates its business or presents itself to the public, among other things. Here, ASHA clearly described both itself and AFA in its complaint, explained that both issue credentials, and further, complained specifically about the credential that AFA was issuing. Thus, we hold that AFA was entitled to coverage based on the policy provision of misappropriation of style of doing business.

Further, we note that although the insurance policy was not in fact illusory, it would seem that AFA had paid for insurance that appeared to cover almost nothing. Hoosier's assertions with respect to the misappropriation of style of doing business stated that essentially, in order for coverage to be extended, AFA would have had to been nearly identical to ASHA in all respects. We disagree, and hold that a "style" of doing business is not so restrictive.

■ Having held that coverage should have been extended to AFA pursuant to the misappropriation of style of doing business provision of the policy, we must turn to the issue of whether the knowledge of falsity exclusion should apply in order to determine if summary judgment for AFA was proper.

### III. *Grant of Summary Judgment— Knowledge of Falsity Exclusion*

Hoosier argues that the trial court's decision that Hoosier had a duty to defend and indemnify AFA was also erroneous because the policy's knowledge of falsity exclusion applied. Hoosier contends that

AFA, in promoting its "Doctor of Audiology" credential, did so knowing that the meaning people would attach to the title was false. We disagree.

Generally, insurers are allowed to limit liability in any manner which is not inconsistent with public policy and an unambiguous exclusionary clause is ordinarily entitled to enforcement. *American Family Life Assurance Co. v. Russell*, 700 N.E.2d 1174, 1177 (Ind.Ct.App.1998), *trans. denied.* However, exclusions, exceptions, and limitations must be plainly expressed in the policy and the exclusionary clause must bring within its scope the particular act or omission that will bring the exclusion into play. *Id.* Any doubts as to the coverage under the policy will be construed against the insurer in order to further the policy's basic purpose of indemnity. *Id.* "Generally, a coverage exclusion is an affirmative defense, proof of which is the insurer's burden." *Rozek v. American Family Mut. Ins. Co.*, 512 N.E.2d 232, 234 (Ind.Ct.App.1987).

Here, Hoosier's policy included a knowledge of falsity exclusion which stated that the insurance did not apply to an advertising injury "[a]rising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." R. 89. Hoosier alleges that the trial court erred in granting summary judgment in favor of AFA based on the knowledge of falsity exclusion because AFA deliberately advertised a false degree and the underlying complaint specifically alleges AFA's deliberate use of the false and misleading title Doctor of Audiology designation.

Here, the knowledge of falsity exclusion, to apply, requires that an advertising injury arise out of materials published by AFA, and that AFA have knowledge of the material's falsity. AFA was engaged in a re-credentialing program. It would confer the *credential* doctor of audiology. AFA was not conferring academic degrees, but credentials, and its materials never claimed otherwise. As such, there was nothing false published by AFA and no way for AFA to have knowledge of any such falsity. Therefore, we hold that the trial court did not err in granting summary judgment in favor of AFA with respect to the knowledge of falsity exclusion.

Because the trial court was correct in interpreting both the advertising injury provision and the knowledge of falsity exclusion, summary judgment for AFA on Hoosier's complaint was proper.

### IV. *Denial of Summary Judgment— Bad Faith Claim* [6]

Hoosier claims that AFA should not be entitled to pursue its bad faith claim and that summary judgment should have been entered in favor of Hoosier with respect to the bad faith claim asserted by AFA because: 1.) Hoosier acted in accordance with Indiana law when it investigated the claim, advised AFA of its coverage position, and filed a declaratory judgment action; 2.) AFA waived its right to argue that the stipulation entered into between AHSA and Hoosier was procured in bad faith; and 3.) regardless of AFA's waiver, the stipulation was obtained and entered prior to AFA's appearance in the declaratory judgment action.

---

**6.** In its counterclaim, AFA asserted in Counts I and II that Hoosier had the duty to defend and indemnify AFA, respectively. Count III was with respect to the bad faith claim AFA asserted. Here, although actions with respect to defense and indemnification may arise, specifically whether or not Hoosier acted in bad faith when denying to defend or indemnify, the issue is with respect to whether Hoosier acted in bad faith generally. Whether summary judgment was appropriate with respect to the duty to defend and indemnify was addressed above.

An insurer has a duty to deal with its insured in good faith, and there is a cause of action for the tortuous breach of that duty. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind.1993), *see also County Line Towing, Inc. v. Cincinnati Ins. Co.*, 714 N.E.2d 285, 291 (Ind.Ct.App.1999), *trans. denied.* "The insurer's obligation of good faith and fair dealing includes an obligation to refrain from causing an unfounded delay in making payment; making an unfounded refusal to pay policy proceeds; exercising an unfair advantage to pressure an insured into settlement of his claim; and deceiving the insured." *County Line Towing, Inc.*, 714 N.E.2d at 291. Therefore, an insured who believes an insurance claim has been wrongly denied may have two distinct legal theories available, one for breach of the insurance contract and one in tort for the breach of the duty of good faith and fair dealing. *Id.* These two theories have separate, although often overlapping, elements, defenses, and recoveries. *Id.*

A good faith dispute about the amount of a valid claim or whether the insured has a valid claim at all will not supply the grounds for recovery in tort for the breach of the obligation to exercise good faith. *Becker v. American Family Ins. Group*, 697 N.E.2d 106, 108 (Ind.Ct. App.1998). "This is so even if it is ultimately determined that the insured breached its contract. That insurance companies may, in good faith, dispute claims, has long been the rule in Indiana." *Id.* Additionally, "the lack of diligent investigation alone is not sufficient to support an award. On the other hand, for example, an insurer which denies liability knowing that there is no rational, principled basis for doing so has breached its duty." *Id.* Thus, poor judgment and negligence do not amount to bad faith; the additional element of conscious wrongdoing must also be present. *Colley v. Indiana Farmers Mut. Ins. Group*, 691 N.E.2d 1259, 1261 (Ind.Ct.App.1998), *trans. denied.* "A finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Id.* As such, a bad faith determination inherently includes an element of culpability. *Id.* Finally, fact issues may preclude summary judgment in favor of an insurer on an insured's bad faith claim. *See Gooch v. State Farm Mut. Auto. Ins. Co.*, 712 N.E.2d 38 (Ind.Ct.App.1999), *trans. denied.*

### A. Denial of Coverage

An insurance company's duty to defend is broader than its duty to indemnify. *Employers Ins. Of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1025 (Ind.Ct.App.1999), *trans. denied.* And, as stated earlier, as a matter of law, the insurer has a duty to conduct a reasonable investigation into the facts underlying the complaint before it may refuse to defend the complaint. *Monroe Guar. Ins. Co.*, 677 N.E.2d at 624. When an insurer questions whether an insured's claim falls within the scope of its policy coverage or raises a defense that its insured has breached a policy condition, the insurer has two options: 1.) file a declaratory judgment action for a judicial determination of its obligations under the policy, or 2.) hire independent counsel to defend its insured under a reservation of rights. *Gallant Ins. Co. v. Wilkerson*, 720 N.E.2d 1223, 1227 (Ind.Ct.App.1999). Thus, an insurer, after making an independent determination that it has no duty to defend, must either file a declaratory judgment for determination of its obligations or defend under a reservation of rights. *Employers Ins. of Wausau*, 716 N.E.2d at 1025.

■ Here, we agree that an insurance company has the right to a good faith dispute with its insured with respect to coverage, primarily where the coverage presents an issue of first impression. We recognize that Hoosier has the right to a good faith dispute and once it denied coverage, Hoosier properly filed for declaratory judgment. What troubles us, however, is the manner in which Hoosier acted in its dispute with AFA. Specifically, the numerous broad reasons Hoosier gave in explaining that coverage was excluded or denied in whole or part. Again, we are not saying that Hoosier acted in bad faith because it was challenging whether or not coverage existed. We are, however, saying that there is a genuine issue of material fact as to whether bad faith existed in the way in which Hoosier sought to secure its position, including the stipulation discussed below. It is not our role to determine whether Hoosier acted in bad faith; however, we hold that there is a genuine issue of material fact present and that the trial court did not err in denying summary judgment with respect to AFA's bad faith claim.

## B. *Stipulation*

Hoosier and ASHA entered into a stipulation which stated that ASHA was not seeking money damages in the underlying action against AFA and that ASHA waived its right to any benefit under the Hoosier insurance policies. Thus, ASHA also waived its rights to participate in the declaratory judgment action and the complaint for declaratory relief was dismissed against ASHA.

With respect to this stipulation, Hoosier alleges that AFA has waived any argument because it did not raise the stipulation as an example of bad faith until it filed proposed findings of fact and conclusions of law to the trial court.[7] Waiver notwithstanding, Hoosier alleges that the stipulation cannot constitute bad faith. Hoosier claims that because the stipulation was entered into prior to AFA's appearance in the declaratory judgment action, AFA's argument should be rejected. Hoosier additionally claims that the stipulation actually benefits AFA in the underlying action, although Hoosier does concede that the stipulation would lead to a finding of no coverage from the date of the stipulation forward.

The fact that Hoosier and ASHA entered into the stipulation at issue here creates a genuine issue of material fact regarding whether Hoosier acted in bad faith in dealing with AFA. It is not necessary to determine whether or not AFA's argument with respect to the stipulation was waived. The fact that Hoosier entered into the stipulation without AFA's knowledge, particularly when it states that ASHA was not seeking monetary damages when indeed, the underlying action was never amended to reflect this fact, clearly creates a genuine issue of material fact. Essentially, Hoosier entered into a stipulation with ASHA, which would create no coverage, and that stipulation was false: it stated that ASHA sought no monetary damages in the underlying action; however, the complaint was never changed and thus, ASHA *was* seeking monetary damages. A genuine issue of material fact exists, and thus, the trial court properly determined that AFA's bad faith claim against Hoosier could proceed.

### Conclusion

We hold that the trial court did not err in granting summary judgment in favor of

---

7. Although not specifically raised in its bad faith section, AFA had presented the trial court with information pertaining to the stipulation entered into between Hoosier and ASHA in its cross-motion for summary judgment and its brief in support.

AFA and denying Hoosier's motion for summary judgment in that the advertising injury provision does provide coverage to AFA and the knowledge of falsity exclusion does not apply. Further, the trial court did not err is finding that AFA's bad faith claim against Hoosier may proceed because there remains a genuine issue of material fact regarding whether Hoosier's actions in dealing with AFA constitute bad faith. Accordingly, we affirm.

Affirmed.

DARDEN and RILEY, JJ., concur.