**Douglas H. VANN and Michelle Vann, Appellants–Plaintiffs/Intervenors,**

**v.**

**UNITED FARM BUREAU MUTUAL INSURANCE COMPANY, Appellee– Third–Party Defendant.**

No. 33A01–0203–CV–98.

Court of Appeals of Indiana.

Nov. 21, 2002.

---

Gregory L. Laker, Eric S. Pavlack, Cohen & Malad, LLP, Indianapolis, IN, Attorneys for Appellants.

Kyle M. Baker, McNeely, Stephenson, Thopy & Harrold, Shelbyville, IN, Attorney for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellants–Plaintiffs, Douglas and Michelle Vann (the "Vanns"), appeal the trial court's entry of summary judgment in favor of Appellee–Third–Party Defendant,

United Farm Family Insurance Company ("Farm Bureau").

We reverse.

*ISSUE*

The Vanns raise one issue for review which we restate as follows: whether the trial court erred in granting summary judgment to Farm Bureau under the terms of its Rural Guardian Policy (the "Policy") issued to Defendant–Third–Party Plaintiff, Walter Upchurch (Upchurch).[1]

*FACTUAL AND PROCEDURAL BACKGROUND*

On April 27, 1999, Douglas Vann (Douglas) was driving a Chevrolet Geo east on Interstate 70 in Hancock County, Indiana. Janice Sandos (Sandos) was immediately behind him in a Chevrolet Lumina that she was driving in the course of her employment with ExtendaCare, Inc. At the same time, Upchurch was traveling westbound on Interstate 70, approaching Douglas' location. Upchurch was driving a pickup truck, which was pulling a fifth-wheel trailer, which was towing a boat trailer carrying a 16–foot Seabring bassboat.

As Upchurch approached Douglas from the opposite direction, Upchurch's boat trailer, with the boat on it, detached from the fifth-wheel trailer. Unbeknownst to Upchurch, the trailer and boat careened across the median and smashed into Douglas' Geo. Sandos' vehicle then rammed the Geo from behind. Indiana State Police Trooper Terry Treon (Trooper Treon) investigated the accident and prepared an Indiana Officer's Standard Crash Report (the "Report"). The Report stated: "[b]ased upon the physical evidence at the scene it was readily apparent that upon impact with Mr. Vann's motor vehicle, the boat separated from the trailer, traveled

1. Upchurch did not participate in this appeal.

across the hood of the vehicle, and struck the cab of Mr. Vann's vehicle." (Appellants' Appendix p. 335).

Douglas sustained life-threatening injuries, including a head injury, brain trauma, significant and permanent orthopedic injuries, permanent eye injuries, and a complete loss of his sense of smell. His damages have exceeded One Hundred Fifty Thousand Dollars ($150,000.00), and will undoubtedly increase due to the continuing nature of his injuries. On July 2, 1999, the Vanns filed their Complaint for Damages against Upchurch, ExtendaCare, Inc., and Sandos.

On the date of the accident, Upchurch had homeowner's insurance under the Policy issued by Farm Bureau. The Policy's Declarations' page stated, *inter alia:*

PART IV—LIABILITY AND OTHER COVERAGES (POLICY FORM AG760 07–92)

F. FARM PREMISES AND PERSONAL PROPERTY $300,000 EACH OCCURRENCE

G. MEDICAL PAYMENTS TO OTHERS—$5,000 EACH PERSON AND $10,000 EACH OCCURRENCE

H. SPECIAL ADDITIONAL COVERAGES—SEE INSURING AGREEMENT

TWO OUTBOARD MOTORS IN EXCESS OF 25 HORSE POWER

SCHEDULED PROPERTY COVERAGES[2]

THE FOLLOWING ITEMS ARE SUBJECT TO A $250 LOSS DEDUCTIBLE

$3,000 ON 150. H.P. OUTBOARD MOTOR, 77 EVINRUDE J0004420

THE FOLLOWING ITEMS ARE SUBJECT TO A $250 LOSS DEDUCTIBLE

$3,000 ON OUTBOARD BOAT, 77 SEABRING INZ111489017 16FT

THE FOLLOWING ITEMS ARE SUBJECT TO A $250 LOSS DEDUCTIBLE

$500 ON TRAILER, 77 EAS 12441 15'

SUBJECT TO THE FOLLOWING ENDORSEMENTS

WATERCRAFT ENDORSEMENT NO. 125

(Appellants' App. pp. 29–30). Watercraft Endorsement No. 125 (the "Endorsement") defined "boat" as, "a watercraft, including inboard or inboard-outboard motors and other permanently attached equipment." (Appellants' App. p. 85). The Endorsement provided: "We cover property shown on the declarations page for direct physical loss from any cause. We pay up to the limit of liability shown on the declarations page." (Appellants' App. p. 85). Indeed, Upchurch received a settlement of $5,500.00 from Farm Bureau for the damage to his boat, trailer and motor. (Appellants' App. p. 251).

On August 31, 1999, Upchurch filed a Third–Party Complaint for Declaratory Judgment against Farm Bureau seeking representation and indemnification under the Policy. On February 23, 2001, Upchurch moved for summary judgment in his declaratory judgment action. He designated, among other things, a copy of the Policy and an affidavit by Trooper Treon with the Report attached. According to the Report:

> The force of the impact dislodged the boat from the trailer. The momentum of the boat carried it across the hood and right side 'A' pillar of [Vann's Geo], over an unknown vehicle V traveling in the driving lane, and to a [sic] uncontrolled rest in the driving lane, and to a [sic] uncontrolled rest in the side ditch on the south side of the Interstate.

(Appellants' App. p. 339).

In his summary judgment motion, Upchurch claimed that PART IV, Coverage F, of the Policy provided coverage for any

---

**2.** An additional boat, motor, and trailer were also listed as scheduled property in the Declarations, but they were not involved in this accident.

liability arising from his accident with Douglas. The Policy stated, under the explanation of "Liability and Other Coverages," that if "Coverage F" is shown on the Declarations' page, then Farm Bureau would provide a defense, and pay up to their limit of liability, for a claim or suit "brought against any insured for compensatory damages because of bodily injury or property damage caused by an occurrence to which this coverage applies." (Appellants' App. p. 67). An occurrence is defined as "an accident, including continuous or repeated exposure to conditions which result, during the policy period, in bodily injury or property damage."[3] (Appellants' App. p. 35).

On March 23, 2001, Farm Bureau filed its response to Upchurch's motion, as well as a Cross Motion for Summary Judgment. Farm Bureau contended that the Policy did not provide coverage because Upchurch's boat was not in use at the time of the accident. Conversely, Farm Bureau argued, it was the trailer that was in use and caused the accident; hence, the Policy's motor vehicle exclusion precluded coverage. Farm Bureau claimed that Upchurch's American Family Insurance policy, which insured his "motor vehicles," covered not only Upchurch's truck but also the camper and trailer that the truck was towing.

On June 8, 2001, the Vanns intervened in the third-party action and joined in Upchurch's summary judgment motion against Farm Bureau. On June 29, 2001, the trial court heard oral argument on the cross-motions and took the matter under advisement. On February 14, 2002, the trial court entered its Order Regarding Third–Party Plaintiff's Motion for Summary Judgment; and, Third–Party Defendant's Cross–Motion for Summary Judgment (Order), which stated, among other things:

The holding of the Court of Appeals of Tennessee in *State Farm Fire & Casualty Company v. Thomas*, appears [ ] rational. That Court concluded that when a boat is being transported upon a trailer, it is the trailer that is being used. Conversely, the boat is not being used at that point in time. As the Court noted, a boat has no use while on a trailer and is only cargo.

However, based upon the conclusions of Trooper Treon, Upchurch would contend that upon impact with the Vann vehicle, the boat left the trailer and constituted the sole instrumentality causing physical injury to Vann.

. . .

As stated by the Court in *Gardner*, supra, and cited by the Court in *White*, supra:

'The accident at issue had a complete, proximate, direct, and timely relationship with the trailer's attachment to the pickup truck. In effect, the accident was the result of an unbroken chain of events, the clearly definable beginning of which arouse [sic] out of the attachment of the trailer to the pickup truck.'

The same analysis applies to the facts of this case. The Plaintiffs' claim against Defendant Upchurch, is premised upon an alleged negligent use of a motor vehicle and not upon the alleged negligent use of a watercraft.

Lastly, Upchurch would content [sic] that this Court's construction of the policy language, renders the watercraft coverage illusory. The Court cannot

3. For purposes of this summary judgment proceeding, the parties assume that Vann's

injuries were caused by Upchurch's activities.

concur with that conclusion. It can be envisioned that bodily injury and/or property damage may be sustained as the proximate cause of the negligent use, loading or unloading of a watercraft under many circumstances more directly related to the watercraft's intended purpose of 'use'.

(Appellants' App. pp. 14–15). For these reasons, the trial court granted summary judgment in favor of Farm Bureau and against Upchurch.[4]

The Vanns now appeal. Additional facts are provided as needed.

## DISCUSSION AND DECISION

### Standard of Review

When reviewing an entry of summary judgment, this court applies the same standard as the trial court. *Burkett v. American Family Ins. Group*, 737 N.E.2d 447, 451 (Ind.Ct.App.2000). Summary judgment is appropriate when the evidence designated to the trial court demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.* at 451–52; Ind. Trial Rule 56(C). When material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts. *Id.* We review such pure questions of law de novo. *Id.* Thus, while findings of fact and conclusions of law made by the trial court offer "valuable

insight into the trial court's rationale for its judgment and facilitate our review, they are not binding on us." *Hoosier Ins. Co. v. Audiology Foundation of America*, 745 N.E.2d 300, 306 (Ind.Ct.App.2001). We must reverse the grant of a summary judgment motion if the record discloses an incorrect application of the law to the undisputed facts. *Lake States Ins. Co. v. Tech Tools, Inc.*, 743 N.E.2d 314, 317 (Ind. Ct.App.2001). The fact that the parties file cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.* at 318.

The interpretation of an insurance policy is primarily a question of law for the court; thus, it is particularly suited for summary judgment. *Id.* When an ambiguity exists in policy language, we must construe the language strictly against the insurer and in favor of coverage for the insured.[5] *American States Ins. Co. v. Kiger*, 662 N.E.2d 945, 947 (Ind.1996). This standard applies especially to unclear provisions that limit or exclude coverage. *Id.* Thus, exclusions from coverage must be clearly and plainly expressed. Otherwise, they will be construed most favorably to the insured, to further the policy's basic purpose of indemnity. *Meridian Mutual Ins. Co. v. Auto–Owners Ins. Co.*, 698 N.E.2d 770, 773 (Ind.1998). We construe

---

**4.** While the trial court found other genuine issues of material fact, it certified for appeal the issue of Farm Bureau's liability.

**5.** Farm Bureau asserts that "[w]hen a case involves a dispute between a third party and an insurer, we [sic] determine the general intent of the contract from a neutral stance," citing *Burkett*, 737 N.E.2d at 453. (Appellee's Brief p. 2). However, "the factor distinguishing these cases in which we apply a neutral stance from cases in which we construe the policy language strictly against the insurer,

appears to be that the party that was seeking to benefit from a particular interpretation of the insurance contract was not a party to the contract." *Id.* Here, the Third–Party Complaint was between Upchurch and Farm Bureau, who were the parties to this Policy. The fact that the Vanns intervened, and are appellants here, does not change the posture of the controversy. *See Woerner v. City of Indianapolis*, 242 Ind. 253, 177 N.E.2d 34, 39 (Ind.1961).

ambiguous language against the insurer in recognition of the acknowledged fact that the insurer drafts the policy language. *Kiger*, 662 N.E.2d at 947.

"An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning." *Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 244 (Ind.2000). In resolving ambiguities caused by inconsistent or conflicting policy language, "[w]e will not remove from coverage a risk which the policy can be reasonably construed to protect against." *Monroe Guar. Ins. Co. v. Campos*, 582 N.E.2d 865, 870 (Ind.Ct. App.1991).

### The "Motor Vehicle" and "Watercraft" Exclusions

The Vanns' complaint alleged that Upchurch's "boat and trailer separated from the fifth-wheel camper and as a result, his boat and trailer crossed the I–70 median and proceeded into the eastbound lane of Interstate 70, colliding with Douglas...." (Appellants' App. p. 19). In his Third–Party Complaint, Upchurch contended that Farm Bureau was required to both defend and indemnify his liability to Vann since "Upchurch's boat is specifically listed on the declarations page, any and all damages caused by the boat constitutes an occurrence giving rise to coverage under the [P]olicy." (Appellants' App. p. 27).

Farm Bureau disputes liability, arguing that it was the trailer that caused the accident, with the boat being mere cargo; that the trailer qualifies as a "motor vehicle" under the Policy; and the Policy specifically excludes coverage for motor vehicles. Upchurch counters that the boat meets the definition of "watercraft," not "motor vehicle;" that Officer Treon's Report and affidavit demonstrate that the boat was the main cause of Douglas' injuries; and that because Upchurch's boat is listed on the Declarations' page, and also

because he bought and paid extra for the Watercraft Endorsement No. 125, the Policy covers his liability for any injuries caused by the boat.

■ Thus, this controversy distills down to whether the boat qualifies as a "motor vehicle" or a "watercraft," which then determines the applicable exclusion. The exclusions at issue state:

### PART IV—EXCLUSIONS

1. Coverage F—Farm Premises and Personal Liability and Coverage G— Medical Payments to Others do not apply to bodily injury or property damage:

   . . .

   e. arising out of the ownership, maintenance, use, loading, unloading or entrustment of:

   (1) a motor vehicle owned in full or in part by, registered in the name of, leased, hired, rented, loaned to or operated by any insured. This exclusion 1e(1) does not apply on the insured location if the motor vehicle does not have a current vehicle registration because it is used exclusively on the insured location or is kept there in dead storage [the "motor vehicle exclusion"];

   (2) a watercraft any insured owns if the watercraft:

   (a) has an inboard or inboard-outboard motor;

   (b) is a sailing vessel, with or without auxiliary power, 30 feet or more in overall length; or

   (c) is powered by one or more outboard motors with more than 25 total horsepower [the "watercraft exclusion"].

   This exclusion 1e(2) does not apply if the watercraft or outboard motor is

shown on the declarations page, or ... [the "watercraft exception"].

(Appellants' App. p. 70). The Policy defines "motor vehicle" as:

1. a motorized land or amphibious vehicle designed for travel on public roads or subject to motor vehicle registration;
2. a trailer, semitrailer or wagon while being towed or carried on a vehicle included in 1;
3. a motorized golf cart, snowmobile or other motorized land or amphibious vehicle owned by any insured and designed for recreational use off public roads, while off an insured location. Motor vehicle does not include a motorized golf cart while used for golfing purposes;
4. any other vehicle while being towed by or carried on a vehicle included in 1, 2, or 3.

(Appellants' App. p. 34). Unfortunately, the Policy does not define "vehicle," nor does Farm Bureau specify which of the four (4) subcategories of "motor vehicles" applies to the facts of this case.[6] The Policy does, however, define "boat" as a "watercraft, including inboard or inboard-outboard motors and other permanently attached equipment." (Appellants' App. p. 85).

Essentially, Farm Bureau claims that when the boat is in the water, it is a watercraft, but when the boat is being hauled on a trailer, it becomes a motor vehicle.[7] As support, Farm Bureau cites to several cases from foreign jurisdictions that the trial court found persuasive. We, however, find none of the cited cases dispositive under the instant facts. For example, in *State Farm Insurance Companies v. Seefeld*, 472 N.W.2d 170, 172 (Minn. Ct.App.1991), the policy at issue specifically stated that "[a] boat ... not being towed by or carried on a vehicle ... is not a motor vehicle." Likewise, *White v. American Deposit Insurance Company*, 732 So.2d 675, 676 (La.Ct.App.1999) addressed the identical State Farm exclusionary language quoted in *Seefeld, supra.* Thus, both *Seefeld* and *White* involved motor vehicle exclusions that specifically addressed the present issue of whether a boat is a motor vehicle while being towed. The present policy has no such clarity.

Another case cited by Farm Bureau, *Gardner v. Allstate Insurance Company*, 575 So.2d 883 (La.Ct.App.1991), involved only a boat trailer, not a boat, and the policy definition of "insured autos" was construed in relation to the state's uninsured/underinsured motorist statute. Similarly, *Nationwide Mutual Insurance Company v. Integon Indemnity Corporation*, 123 N.C.App. 536, 473 S.E.2d 23 (1996), involved only a trailer; no watercraft was involved. Thus, none of Farm Bureau's cited cases support its contention that, under these facts, Vanns' boat is a motor vehicle.

In its Order, the trial court agreed with Farm Bureau that it was the trailer that was "in use", not the boat. Specifically, the trial court concluded that Vanns' claim against Upchurch was "premised upon an alleged negligent use of a motor vehicle

6. We note that Webster's II New College Dictionary p. 715 (2001) defines "motor vehicle" as "[a] self-propelled wheeled conveyance not running on rails." This definition certainly does not describe a boat.

7. To support its claim that the boat was a motor vehicle while being towed, and hence

covered by Upchurch's automobile insurance policy with American Family Insurance Group, Farm Bureau designated a copy of Upchurch's American Family Insurance policy. We decline, however, to construe the coverage of an insurance policy unrelated to the present controversy.

and not upon the alleged negligent use of a watercraft." (Appellants' App. p. 15). We must respectfully disagree with the trial court. After reviewing the Policy's language, the circumstances surrounding the accident, and the rules of law governing our interpretation of insurance policies, we conclude that the boat squarely meets the definition of "watercraft," not "motor vehicle."

First, Farm Bureau never explains how Upchurch's boat fits within the definition of "motor vehicle," nor does the trial court. A boat is certainly not a land or amphibious vehicle, nor is it a golf cart, snowmobile or other motorized land or amphibious vehicle. The only conceivable subsection of the "motor vehicle" definition that the boat could fall under would be the last one: "any other vehicle while being towed by or carried on a vehicle included in 1, 2, or 3." (Appellants' App. p. 34). To fit within this category, however, the Vanns' boat would first have to be a "vehicle."

■ We find nothing in the Policy that would lead a reasonable person to conclude that the Vanns' boat was a vehicle, motorized or not. While the Policy does not define "vehicle," it does define "boat" as "a watercraft, including inboard or inboard-outboard motors and other permanently attached equipment." (Appellants' App. p. 85). If it was the Policy's intention to categorize a boat as a vehicle, thus bringing it within the motor vehicle exclusion, the Policy should have clearly stated so in its definition of "boat." Exclusions must be specifically stated to be operative. *General Housewares Corp. v. National Surety Corp.*, 741 N.E.2d 408 (Ind.Ct.App. 2000). Most importantly, the Policy itself divides motor vehicles and watercraft into two different categories, thereby making a clear distinction between the two. All of this leads us to conclude that the Policy clearly exempts a boat from the definition of motor vehicle.

At the very least, the Policy language is ambiguous. We must, therefore, construe the Policy language in favor of Upchurch. To that end, we first take exception to Farm Bureau's statement that "Upchurch understood that Farm Bureau liability insurance for the boat only applied while the boat was on the water. It was his understanding that the towing vehicle provided coverage for the boat while in tow." (Appellee's Brief p. 13). To the contrary, while Upchurch's deposition testimony is somewhat equivocal, he nonetheless stated that he understood the Policy to cover the boat when "it's in water or traveling." (Appellants' App. p. 251). Second, the watercraft exclusion specifically does not apply "if the watercraft or outboard motor is shown on the declarations page," which it is. This language clearly implies that Upchurch's boat was not excluded from coverage under Coverage F.

We also disagree with the trial court's emphasis on the fact that the boat was not "in use" at the time of the accident. While it is true that the boat was not in water at the time of the accident, the Policy makes no such distinction. Moreover, unless Upchurch lived on water or moored his boat at a dock or marina year-round, there is simply no way he could get his boat to water where it could be used without transporting it over the road on a trailer. This, to us, seems to be an obvious and clear prerequisite to the use of his boat— certainly one that a reasonable person would view as within the purview of boat use. *See, e.g., State Farm Fire and Casualty Co. v. Pinson*, 984 F.2d 610, 612 (4th Cir.1993) ("A boat, on the other hand, *must* be towed in order for a landlocked owner to derive any enjoyment from boat ownership.") (Emphasis in original).

Finally, and perhaps most importantly, while Upchurch's boat was not the sole instrumentality of Douglas' injuries, the

evidence demonstrates that it significantly exacerbated the injuries caused by the trailer. We find no reason, nor has any been provided, why Upchurch's potential liability might not stem directly from both instruments, as both clearly contributed to the harm caused to Upchurch.

Therefore, we find that the trial court erred in failing to construe the Policy language either as clearly providing coverage or, if not so clearly, construing the ambiguous language in favor of Upchurch.

### CONCLUSION

For all the foregoing reasons, we conclude that the trial court's grant of summary judgment must be reversed and judgment entered in favor of Upchurch.

Reversed.

MATTINGLY–MAY, J., and ROBB, J., concur.